Antonio **MENDEZ–EFRAIN,** Petitioner,

v.

**IMMIGRATION & NATURALIZATION SERVICE,** Respondent.

No. 86–7241.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 12, 1987.

Decided March 25, 1987.

Carolyn A. Johnston, San Francisco, Cal., for petitioner.

Eileen Carty, San Francisco, Cal., and Stewart Deutsch, Washington, D.C., for respondent.

Before HUG, SCHROEDER and ALARCON, Circuit Judges.

HUG, Circuit Judge:

Antonio Mendez-Efrain ("Mendez") petitions for review of the BIA's denial of asylum and withholding of deportation.

## I. Background

The petitioner is a citizen and native of El Salvador. He is a field worker in a small rural region inhabited by approximately 125 people. On March 3, 1985, at the age of 25, he left El Salvador by visa to Mexico. Subsequently, he was apprehended in the United States and admitted deportability under 8 U.S.C. § 1251(a)(2) (1982) (entry without inspection).

Mendez presents three bases for his fear of persecution if he returns to El Salvador. First, he contends that he is the oldest son of a family that received property under the Government Land Redistribution Program. This program involved the confiscation of larger estates and the redistribution to farm families with "limited means." Mendez testified that the former landowners of these estates are now returning and interfering with the use of the land.

Mendez believes that he will be subject to attack by these former landowners because: (1) another farm family that received redistributed land was murdered in 1984; (2) other farm families that received land have been threatened; and (3) he is the oldest son in his family.

The second basis for Mendez's fear of persecution is that members of his family have been killed by anti-government guerillas while serving in the military. He fears that since he has the same surname as two cousins who were killed he will be targeted by the guerillas.

The final basis for Mendez's fear of persecution is his four-day detention and interrogation by the military of El Salvador. Mendez testified that military officials told him he had a legal obligation to serve in the armed forces. He resisted these efforts, claiming: (1) he could not serve because he is the oldest child in his family at home; (2) he did not want to serve because the military engages in indiscriminate and irrational killings; and (3) he did not want to be a part of either side in the El Salvadorian conflict. Mendez testified that intercession by some friends with a colonel secured his release.

On July 23, 1985, the immigration judge ("IJ") denied petitioner's requests for asylum and withholding of deportation. The IJ found that Mendez was not "particularly credible." This conclusion apparently was based on Mendez's physical demeanor and on the fact that much of his oral testimony was not included in his asylum application. Nonetheless, the IJ went on to consider petitioner's evidence "in a light most favorable to him." The IJ concluded that Mendez had not established a well-founded fear or a clear probability of persecution.

On February 6, 1986, the BIA dismissed Mendez's appeal. The BIA deferred to the IJ's ability to observe the physical demeanor of the witness. Nevertheless, the BIA also went on to consider whether Mendez had established sufficient fear of persecution. The BIA agreed with the IJ that Mendez had not.

## II. Discussion

Withholding of deportation under section 243(h) of the Immigration and Naturalization Act prohibits the deportation of an alien whose life or freedom would be threatened on account of race, religion, nationality, membership in a particular group, or political opinion. 8 U.S.C. § 1253(h) (1982). Section 243(h) withholding of deportation is a mandatory form of relief, *see Espinoza-Martinez v. INS*, 754 F.2d 1536, 1539 (9th Cir.1985), available if a petitioner establishes a "clear probability" of persecution, *INS v. Stevic*, 467 U.S. 407, 413, 104 S.Ct. 2489, 2492, 81 L.Ed.2d 321 (1984). We review a denial of withholding of deportation under the substantial evidence standard. *Bolanos-Hernandez v. INS*, 767 F.2d 1277, 1282 n. 8 (9th Cir.1984).

Section 208 asylum is a discretionary form of relief, available if an alien meets the definition of a "refugee." *See* 8 U.S.C. § 1101(a)(42)(A) (1982). A refugee is one who is unable or unwilling to return to his home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion...." *Id.* We apply a two-tiered standard of review to an asylum decision. First, we evaluate whether substantial evidence of a well-founded fear of persecution exists. *Bolanos-Hernandez*, 767 F.2d at 1282 n. 9. Second, we apply the abuse of discretion standard to the ultimate decision granting or denying asylum. *Id.*

Under either the "clear probability" or "well-founded fear" standard, the alien must introduce credible, direct, and specific evidence of facts that would support a reasonable fear of persecution. *Espinoza-Martinez*, 754 F.2d at 1540; *Zepeda-Melendez v. INS*, 741 F.2d 285, 290 (9th Cir.1984). Exactly what amounts to specific evidence depends upon the facts and circumstances of each case. *Espinoza-Martinez*, 754 F.2d at 1540.

Accepting Mendez's testimony as truthful and believable, in light of the standard of review, we conclude that he has not established either a clear probability or a well-founded fear of persecution.

With regard to Mendez's claim of persecution from the former landowners, the IJ and BIA relied largely on the fact that Mendez had not been persecuted or molested by this group, and that his family continued to reside on the family farm without harm. It was not impermissible to consider these factors. *See, e.g., Estrada v. INS*, 775 F.2d 1018, 1021–22 (9th Cir. 1985); *Chavez v. INS*, 723 F.2d 1431, 1434 (9th Cir.1984). While evidence of these factors is not essential to a persecution claim, *see, e.g., Garcia-Ramos v. INS*, 775 F.2d 1370, 1374 (9th Cir.1985), it does substantially support the agency decision.

Additionally, there was no other objective evidence that the former landowners are carrying on a campaign of persecution. Mendez presented documentary evidence on the tragic and widespread danger of violence and human rights violations affecting all Salvadorians. However, that is not enough to establish persecution. *Chavez*, 723 F.2d at 1434; *Martinez-Romero v. INS*, 692 F.2d 595, 595–96 (9th Cir. 1982). The Amnesty International Reports offered by Mendez make no reference to persecution or violence by former landowners. Mendez provided no specific evidence other than his "belief" that the former landowners were behind the threats and murders of other farm families.

There was also no clear evidence of a specific individualized threat to Mendez by the former landowners. The only clear testimony was that Mendez is identified by the land distribution records as the oldest son of his family. In the absence of specific evidence that the landowners have targeted this group, we conclude that Mendez has not established an individualized clear probability or well-founded fear of persecution from the former landowners.

Similarly, we are unconvinced by Mendez's claim of persecution from the anti-government guerillas. The only evidence offered by Mendez was his testimony that he had cousins in the military; that two of them were killed; and that they shared the same surname. The general level of violence or danger from anti-government forces does not establish a claim of persecution. *See Del Valle v. INS*, 776 F.2d 1407, 1411 (9th Cir.1985). Mendez offered no evidence that the guerillas target and persecute the families of the Salvadorian military. Mendez also provided no evidence of specific threats, harassment, or violence against his family.

Based on this record, the IJ and BIA concluded that Mendez's cousins were killed in the line of duty with the Salvadorian military and that Mendez had not shown his family was singled out by the guerillas. Substantial evidence supports this conclusion.

Finally, Mendez fears persecution from the Salvadorian military. Mendez testified that he was recruited, held, and

interrogated for four days. In rejecting Mendez's claim of persecution, the IJ concluded:

> At best, the record indicates that [Mendez] was able to convince the military officials that he should not serve in the armed forces because he was the oldest child residing with the family on the farm. There is no indication that he was tortured or molested while in detention and was released through the intercession of a friend. In addition, [Mendez] had a visa for Mexico and was able to leave the country shortly thereafter without any interference from the government.

The BIA agreed that Mendez's detention and subsequent release did not establish that he either was or will be persecuted in El Salvador.

 We will not permit the BIA to infer that an applicant is unlikely to be persecuted *solely* because the applicant was released or allowed to leave the country. *See, e.g., Del Valle,* 776 F.2d at 1413; *Garcia-Ramos,* 775 F.2d at 1374 n. 7. In *Del Valle,* armed gunmen broke down the door to petitioner's apartment, bound his hands behind his back, hit him in the stomach, and kidnapped him. Subsequently, he was "blindfolded, interrogated, and beaten." *Del Valle,* 776 F.2d at 1410. He also presented corroborated testimony that his relatives had been subject to persecution by the same group. *Id.* at 1409. The BIA concluded that Del Valle was released because his persecutors were satisfied that he was not a member of the opposition. *Id.* at 1413. We held that there was no evidence in the record to support this reasoning. The inference that petitioner would not be persecuted solely based on his release "would lead to the absurd result of denying asylum to those who have actually experienced persecution and were fortunate enough to survive arrest or detention." *Id.*

In this case, however, the IJ and BIA did not make inferences *solely* on the basis of Mendez's release. There was substantial other evidence to support the conclusion that Mendez would not be subject to persecution. Mendez testified that he was "recruited" by the military. He was not tortured, beaten, molested, harmed, or even threatened. The military did not warn him that he should never return to El Salvador. Mendez's friends and family also continue to reside in El Salvador. They have never been harmed or threatened by the military. Further, Mendez presented no evidence or testimony that any other individuals have been harmed or threatened for refusing to serve in the military.

 In sum, we conclude that the BIA's decision that Mendez had not established either a clear probability of persecution or a well-founded fear of persecution is supported by substantial evidence. Therefore, he is not eligible for either withholding of deportation or asylum.

Our holding forcloses the need to evaluate the adequacy of the adverse credibility finding. We have accepted Mendez's testimony as true, and we conclude that he has failed to establish a legally sufficient claim of persecution.

PETITION DENIED.