81 F.3d 169
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Carlos Alberto OBANDO-ROCHA, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 94-70699.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 14, 1996.
Decided April 3, 1996.
 
 1
 Before: BEEZER and HAWKINS, Circuit Judges, and ZILLY,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Petitioner Obando-Rocha, a native and citizen of Nicaragua, applied for political asylum and withholding of deportation based on past economic and political persecution and a well-founded fear of future persecution. The Immigration Judge ("IJ") denied petitioner's applications. The Board of Immigration Appeals ("BIA") affirmed. We have jurisdiction pursuant to 8 U.S.C. § 1105a(a), and we affirm.
 
 I. Facts
 
 4
 Petitioner entered the United States illegally in March 1985. Petitioner testified before the IJ that he left Nicaragua after his brother and uncle were killed by the Sandinistas for their affiliation with the Somoza National Guard and after petitioner was harassed for his refusal to participate in Sandinista-sponsored political activity.
 
 
 5
 Petitioner testified that beginning in 1980, the Sandinista Defense Committee (CDS) pressured petitioner to join the CDS and to begin supporting the Sandinistas. Petitioner testified that he refused to attend CDS meetings or join the CDS because he did not agree with the Sandinistas' political beliefs and because he believed they had murdered his brother and uncle. The CDS punished petitioner for his refusal to cooperate by taking away his family's food ration card, which forced his family to buy food on the black market at five times the regular price.
 
 
 6
 In 1981, petitioner received a work authorization card from the government. Petitioner testified that when the authorization expired, the government refused to renew it because the CDS reported that petitioner had not "cooperated with the revolution." The CDS offered to clear petitioner and renew his authorization if he would put up posters of Sandinista "commanders," but he refused. Although petitioner's work authorization card was never renewed, he continued to work without incident until 1985.
 
 
 7
 In February 1985, petitioner was arrested, detained, and interrogated for five days for working without an authorization card. He testified that the Sandinista police told him that the Sandinistas were watching his family and threatened him by telling him he was never going to see his family or the sun again. Petitioner testified that when he was released from jail the police told him what they had done was nothing in comparison to what would happen if he did not begin to cooperate with the CDS.
 
 
 8
 By March 1985 petitioner had left Nicaragua and gone to the United States. Although the government initially refused to give petitioner a passport due to his failure to cooperate with the CDS, petitioner was issued a passport after bribing a passport official.
 
 II. Discussion
 A. Past Persecution
 
 9
 The BIA concluded that neither the economic deprivation experienced by petitioner nor the arrest and detention of petitioner by the Sandinista police made him statutorily eligible for asylum. Because the BIA's eligibility determination is supported by substantial evidence, we affirm. See INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992) (noting that the BIA's determination regarding refugee status, including whether the alien has established a well-founded fear of persecution, "must be upheld if 'supported by reasonable, substantial, and probative evidence on the record considered as a whole' " (quoting 8 U.S.C. § 1105a(a)(4))).
 
 
 10
 Petitioner contends that the economic hardship inflicted by the Sandinistas constitutes past persecution on account of his political belief and thus makes him eligible for asylum. Although petitioner experienced some significant economic deprivation due to the Sandinistas' denial of a work permit and a food ration card, his treatment did not rise to the level of severity necessary to establish asylum eligibility. This circuit has denied asylum applications in situations similar to that which faced petitioner. Cf. Saballo-Cortez v. INS, 761 F.2d 1259, 1264 (9th Cir.1984) (concluding that "[t]he fact that [Saballo-Cortez] was denied [by the Sandinistas] such perquisites as discounts on food and a special work permit for some other type of employment does not establish persecution"). Saballo-Cortez is consistent with this court's other economic persecution cases, in which asylum eligibility was established only on a showing of a severe impairment of the applicant's ability to earn a living. See, e.g., Ubau-Marenco v. INS, 67 F.3d 750, 755 (9th Cir.1995) (noting that confiscation of entire family business without compensation because of family's political beliefs may not be enough, standing alone, to support finding of economic persecution); Desir v. Ilchert, 840 F.2d 723, 727 (9th Cir.1988) (finding persecution where threats on applicant's life had "severely impaired" his ability to earn a living); Kovac v. INS, 407 F.2d 102, 104-07 (9th Cir.1969) (holding that applicant may be eligible for asylum if applicant was denied all opportunity to work because of applicant's political beliefs). The denial of a food ration card and a work permit does not rise to the level of deprivation required by this court in Saballo-Cortez and other economic persecution cases.
 
 
 11
 Petitioner contends that even if his economic hardship did not rise to the level of past persecution, his arrest and detention makes him eligible for asylum. The BIA concluded that his "brief detention, during which he was frightened but not harmed, did not rise to the level of 'persecution,' as that term is interpreted under the Act." Because the BIA's conclusion is supported by substantial evidence, we affirm.
 
 
 12
 Petitioner's five-day arrest and detention falls short of "persecution" as the term has been interpreted by this court. See, e.g., Mendez-Efrain v. INS, 813 F.2d 279, 282-83 (9th Cir.1987) (holding that applicant's four-day detention by El Salvadoran military did not constitute past persecution); see also Prasad v. INS, 47 F.3d 336, 339 (9th Cir.1995) (holding that four to six hour detention by Fiji military did not constitute past persecution even though detention included physical abuse); Desir, 840 F.2d at 727 (holding that multiple arrests in combination with "severe beat[ings]" constitutes past persecution); Kapcia v. INS, 944 F.2d 702, 708 (10th Cir.1991) (holding that two day incarceration during which applicant was interrogated and beaten did not compel a finding of past persecution) (cited with approval in Prasad ). Petitioner was not physically abused, and his detention for five days for failure to have a work permit, even coupled with threats of future violence, does not satisfy this circuit's definition of persecution. See Ubau-Marenco, 67 F.3d at 754 (defining persecution as "the infliction of suffering or harm upon those who differ (in race, religion, or political opinion) in a way regarded as offensive." (internal quotations and citations omitted)). Petitioner's arrest simply fails to rise to the level of persecution required for asylum eligibility.
 
 B. Well-Founded Fear of Future Persecution
 
 13
 Petitioner contends that if the panel finds that he is not eligible for asylum based on past persecution, that he should be given asylum based on a well-founded fear of future persecution. The BIA concluded that petitioner failed to satisfy the objective component of the "well-founded fear" test, which requires the applicant to come forward with "credible, direct, and specific evidence ... that would support a reasonable fear that the [applicant] faces persecution." Shirazi-Parsa v. INS, 14 F.3d 1424, 1427 (9th Cir.1994).
 
 
 14
 Although his family has suffered at the hands of the Sandinistas in the past, petitioner failed to adequately respond to the BIA's determination that conditions in Nicaragua had changed following President Chamorro's victory in Nicaragua's 1990 Presidential election. Petitioner did not present any evidence "so compelling that no reasonable factfinder" could fail to find that he had an objectively reasonable well-founded fear. Elias-Zacarias, 502 U.S. at 481. Petitioner provided no direct and specific evidence that he would face persecution if he returned to Nicaragua and did not establish that he would be targeted for persecution even after President Chamorro's 1990 victory. Petitioner did not know whether Nicaragua still uses food rations and work permits or if the Sandinistas maintain the same control over food and work as they did in the mid-1980s. Neither did he present any evidence that his mother or other family members who have remained in Nicaragua have been persecuted by the Sandinista military or police. Cf. Ubau-Marenco, 67 F.3d at 756 n. 4 (denying asylum application in part because applicant's friends and family continued to live in applicant's country of origin without threats or violence); Cuadras v. INS, 910 F.2d 567, 571 (9th Cir.1990) (same); Mendez-Efrain, 813 F.2d at 283 (same). Accordingly, the BIA's determination that petitioner did not have a well-founded fear of future persecution was not in err.
 
 C. Withholding of Deportation
 
 15
 Because petitioner is not eligible for deportation under § 208 of the INA, he also fails to satisfy the higher, "clear probability" standard that governs § 243(h) withholding of deportation determinations. See Prasad, 47 F.3d at 340 ("Because the Prasads failed to demonstrate past persecution or the requisite fear of persecution as required for asylum, it follows that they cannot meet the more stringent standard for withholding of deportation.").
 
 
 16
 AFFIRMED.
 
 
 
 *
 Honorable Thomas Zilly, United States District Judge for the District of Western Washington, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3