82 F.3d 423
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Shiu NARAYAN, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 94-70796.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 15, 1996.*
Decided April 10, 1996.
 
 1
 Before: THOMPSON and KLEINFELD, Circuit Judges, and WILSON, District Judge.**
 
 
 2
 MEMORANDUM***
 
 
 3
 Petitioner Shiu Narayan ("Narayan") is a 34 year old native of Fiji. On December 28, 1986, Narayan entered the United States without inspection. On December 7, 1990, the immigration judge ("IJ") found Narayan deportable pursuant to 8 U.S.C. § 1251(a)(2). The IJ also denied Narayan's applications for asylum and withholding of deportation pursuant to 8 U.S.C. §§ 1158(a) and 1253(h). The IJ granted Narayan voluntary departure under 8 U.S.C. § 1254(e). Narayan appealed the IJ's decision to the BIA. On October 31, 1994, the BIA dismissed the appeal, but extended the time for voluntary departure. Narayan now petitions for review.
 
 JURISDICTION
 
 4
 The BIA had jurisdiction over the appeal from the IJ's decision under 8 C.F.R. § 3.1(b)(2) (1994). The BIA issued its final order dismissing the appeal on October 31, 1994. Narayan timely filed his petition for review of the BIA's decision on November 25, 1994. 8 U.S.C. § 1105a(a)(1) (Supp.1995). This court has jurisdiction over the petition pursuant to 8 U.S.C. § 1105a(a).
 
 SCOPE AND STANDARD OF REVIEW
 
 5
 Our review is limited to the BIA decision because it appears that the BIA conducted an independent review of Narayan's applications. see Kazlauskas v. INS, 46 F.3d 902, 905 (9th Cir., 1995); Campos-Granillo v. INS, 12 F.3d 849, 852 (9th Cir., 1993).
 
 
 6
 We apply two standards of review to denials of applications for asylum. First, factual findings are upheld where there is substantial evidence to support them; reversal is warranted only where the evidence presented was such that it not only supports the petitioner's conclusion, but compels it. INS v. Elias-Zacarias, 502 U.S. 478, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992); Prasad v. I.N.S., 47 F.3d 336, 338 (9th Cir., 1995); Kazlauskas, 46 F.3d at 905. Second, the ultimate decision denying asylum is reviewed for abuse of discretion. Kazlauskas, 46 F.3d at 905; Berroteran-Melendez v. INS, 955 F.2d 1251, 1255 (9th Cir., 1992); Mendez-Efrain v. I.N.S., 813 F.2d 279, 282 (9th Cir., 1987).
 
 Narayan's Evidence
 
 7
 Narayan was born in Fiji but is of Indian descent. He testified that he and his parents campaigned for the Labor coalition government in 1986. AR 43:15-26; 44:15-21. In December, 1986, Narayan was assaulted and beaten twice by indigenous Fijians, once at his home. Narayan stated that the assailants told him to stop campaigning and asked him for the names of others in the Labor Party. Narayan stated that the assailants threatened his life and the lives of his parents. They also stole jewelry and a "video deck." AR 46-51. Although Narayan hypothesized that the opposing political party may have given the assailants a case of beer to induce their threats against him, Narayan alleged no direct intimidation or action by the government. AR 54:9-26; 55:1.
 
 
 8
 Narayan testified that he reported the incidents to the police. However, according to Narayan, no further action was taken. Narayan stated that nothing happened because he had not seen the assailants and had no proof as to who they were. AR 48:18-20.
 
 
 9
 Following these incidents, Narayan and his parents moved to a farm approximately 27 miles from their house in Suva. However, they remained at the farm only briefly as conditions there were no better than they had been in Suva. AR 58:1-25. After two days on the farm, Narayan left for Canada where his brother lived. AR 60:9-19. Narayan's parents returned to their home in Suva; they remain there today but are allegedly seeking visas to emigrate to Canada. AR 58:15-26; 50:1-19. After two weeks in Canada, Narayan entered the United States in part because he had heard of the United State's reputation for protection of human rights. AR 60:8-17.
 
 Other Evidence
 
 10
 The IJ took administrative notice of the Department of State's Country Reports on Human Rights for 1989 for Fiji. AR 42:9-13. According to the Country Reports, Fiji's population is almost equally divided between ethnic Fijians and ethnic Indians. AR 70. In May, 1987, after an election in which the Labor coalition gained a majority of the seats in government, a bloodless coup occurred. The coup cited ethnic Indian dominance of the government as a primary motivation. AR 70. In late 1987, the coup's military regime stepped down and an interim government took over. The interim government expressed its intention to adopt a constitution which would guarantee the political predominance of ethnic Fijians. AR 70.
 
 
 11
 As of 1989, discrimination against ethnic Indians remained a problem. AR 70. However, by 1989, reports of arbitrary arrests and detentions had markedly declined. AR 70. Anti-government activists and members of the deposed government were occasionally detained, questioned, and verbally abused, but the detentions were brief and there were no reports of physical abuse or torture. AR 70. The report also notes that ethnic Indians complain about inadequate police protection against harassment and crime, some of which is racially motivated. AR 72. However, some arrests had been made and investigations were underway in other incidents. AR72. Narayan did not present any evidence to indicate that conditions in Fiji have substantially deteriorated for ethnic Indians since 1989.
 
 Well-Founded Fear of Persecution
 
 12
 An applicant for withholding of deportation must show a "clear probability" of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1253(h); INS v. Stevic, 467 U.S. 407, 430, 104 S.Ct. 2489, 2501, 81 L.Ed.2d 321 (1984). However, an applicant for asylum need only show a "well-founded fear" of persecution on account of one or more of the enumerated grounds. 8 U.S.C. § 1158(a). The "well-founded fear" standard is more generous than the "clear probability" standard. INS v. Cardoza-Fonseca, 480 U.S. 421, 449, 107 S.Ct. 1207, 1222, 94 L.Ed.2d 434 (1987); Stevic, 467 U.S. at 425. An applicant who fails to establish a well-founded fear of persecution also fails, by definition, to establish a clear probability of persecution.
 
 
 13
 To show a well-founded fear of persecution, an applicant must show that a reasonable person in his circumstance would fear persecution and that he himself has a genuine fear of persecution. Desir v. Ilchert, 840 F.2d 723, 726 (9th Cir.1988). To satisfy the objective aspect of the test, an applicant need only show that there is a "reasonable possibility" of persecution, not that persecution is more likely than not. Rodriguez v. INS, 841 F.2d 865, 868 (9th Cir., 1987); Vides-Vides v. INS, 783 F.2d 1463, 1469 (9th Cir., 1986). However, fear based on mere speculation is insufficient.[1]
 
 
 14
 Narayan's evidence of generalized discrimination against ethnic Indians in Fiji (AR 16:1-4; 23:22-26) cannot, in and of itself, support his claim for persecution on account of race. Prasad v. INS, 47 F.3d 336, 340 (9th Cir., 1995); Sanchez-Trujillo v. INS, 801 F.2d 1571, 1574 (9th Cir., 1986). Narayan also claims that he fears reprisal from the mobs of ethnic Fijians who previously assaulted him and threatened his life. AR 53:21-26; 54:1-2. However, Narayan specifically claims that the people who beat and threatened him were private citizens, not the government. For asylum purposes, the conduct of non-governmental groups constitutes persecution only if the government is unable or unwilling to control the conduct. McMullen v. INS, 658 F.2d 1312, 1315 n. 2 (9th Cir., 1981).
 
 
 15
 There is substantial evidence to support the BIA's conclusion that Narayan had not shown that the Fijian government was "unable or unwilling" to protect him. At the hearing, Narayan stated that he had gone to the police after he was beaten, but that "nothing was done because we never seen them [sic] and we had no proof." AR 48:18-20. The BIA was entitled to conclude from this that the police might have attempted to find Narayan's assailants, but that Narayan had given them too little to go on. In addition, the Country Reports indicate that at least some efforts are being made by the Fijian police to combat racially motivated attacks on ethnic Indians. The BIA also noticed that Narayan's own family continued to reside in Fiji without further incident, lending further credence to the proposition that ethnic Indians do receive some protections. In short, there was no evidence in the record compelling a conclusion that the police were unable or unwilling to control mobs such as those that attacked Narayan and his family.
 
 
 16
 Narayan also speculated that the civilian mob may have been given beer by the opposing party in order to induce them into making their attacks on Narayan and his family. AR 54:12-26; 55:1. It is not clear what the connection is between the opposing party and the government of Fiji either during 1986 or at the present time. Moreover, even if the opposing party was the ruling party at the time of the attacks, there was no evidence in the record compelling the conclusion that the opposing party had in fact instigated the attacks. Thus, the BIA was entitled to regard Narayan's testimony as pure speculation.
 
 
 17
 Even if this court were to give Narayan the benefit of the doubt and conclude that the police were unable or unwilling to protect Narayan in 1986, there is no evidence that the police are similarly unable or unwilling to protect ethnic Indians like Narayan at the present time. To the contrary, the Country Reports indicate that as of 1989, the police were attempting to control racial attacks and had made some arrests and investigations, although the Indian community complained about the police's effectiveness. Moreover, Narayan has not presented any evidence that other politically active ethnic Indians residing in Fiji have continued to suffer attacks. Therefore, there is no evidence compelling a conclusion that Narayan has a well-founded fear of persecution.
 
 
 18
 Because the record supports the BIA's determination that Narayan did not have a well-founded fear of persecution, it follows a fortiori that he did not have the "clear probability of persecution" needed for withholding under 8 U.S.C. § 1253(h).
 
 
 19
 PETITION DENIED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 Honorable Stephen V. Wilson, United States District Judge for the Central District of California, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 In cases where past persecution has been so atrocious that returning the applicant to the place of persecution would be inhumane, the possibility of future persecution is irrelevant. Acewicz v. INS, 984 F.2d 1056, 1062 (9th Cir.1993). Narayan has not alleged past persecution sufficient to warrant ignoring the possibility of future persecution should he return to Fiji