86 F.3d 1161
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
William Locadio ESPINOZA-RIVERA, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 94-70885.
 United States Court of Appeals, Ninth Circuit.
 Submitted April 10, 1996.*
Decided May 23, 1996.
 
 1
 Before: NORRIS, WIGGINS, Circuit Judges, JONES,** District Judge.
 
 
 2
 MEMORANDUM***
 
 
 3
 William Locadio Espinoza-Rivera ("petitioner") petitions for review of the Board of Immigration Appeals' ("BIA") affirmance of the immigration judge's denial of political asylum and denial of withholding of deportation. We have jurisdiction pursuant to 8 U.S.C. § 1105a(a) and deny the petition.
 
 FACTS
 
 4
 Petitioner is a native and citizen of Nicaragua. Prior to the Sandinista revolution in 1979, petitioner's father was the chauffeur and bodyguard of a cousin of Anastasio Somoza, president of Nicaragua. Petitioner would occasionally assist his father by running errands or delivering messages for members of the Somoza family. At the insistence of his parents, petitioner left Nicaragua for Costa Rica as conflict between the Sandinistas and Somozistas increased during 1979. After the Sandinistas gained power on July 19, 1979, petitioner lost contact with his family; he returned to Nicaragua on July 22, 1979 to find his family unharmed.
 
 
 5
 Soon after the revolution, petitioner's father was detained and investigated by the Sandinistas as a Somoza collaborator, and was not released until late 1980. The local Sandinista Defense Committee ("CDS"), an organized group of Sandinista sympathizers, began harassing petitioner's family, apparently because of their association with the Somoza family and petitioner's uncle's membership in the Contras. Their home was stoned and painted with Communist slogans, and an automobile used for a family business was confiscated. Petitioner believes that the pressure imposed upon his family by the Sandinistas led to his father's stroke in February 1984 and eventual death in April 1985.
 
 
 6
 In 1982, petitioner began attending meetings of the Nationalist Democratic Movement, a political organization opposed to Sandinista rule. While he was not an active member of the party, he helped some of his friends from night school put together political pamphlets and distribute propaganda. The local leader of the CDS, Judith Menar, allegedly threatened petitioner and his friends on several occasions, warning them that the CDS knew of their political activities. Petitioner was also a member of a dance group that traveled the country and sang songs in opposition to the Sandinistas.
 
 
 7
 During the same period of time, petitioner also became involved with the Christian Socialist Party. He did not become an official member of the party because the Sandinistas were already subjecting him to substantial harassment. While returning home on the night of February 14, 1983 from a meeting of that party, petitioner and two friends, Ciro Molina and Carlos Huerta, both members of the party, were attacked by a group of approximately ten people, some of them in military uniforms. Petitioner had his nose broken, and his eye and forehead cut. After the beating, petitioner and his friends were approached by Judith Menar, who told them "this is simply a lesson of what can happen to us in the future if we continue participating in anti-revolutionary political meetings." A.R. at 97.
 
 
 8
 In October 1984, petitioner's friend Molina was killed by Sandinista police, who claimed that they had mistaken Molina for a burglar. Petitioner's other friend, Huerta, disappeared while on his way to a meeting of the Christian Socialist Party in the town of Esteli in August 1985, and petitioner presumes that he is dead. Soon after Huerta's death, petitioner decided to flee the country, fearful that his life was in danger because Molina, Huerta, and he had been the only young men in their neighborhood who belonged to the opposition political parties.
 
 
 9
 When petitioner attempted to leave the country in November 1985, he was interrogated by members of the Sandinista State Security from 9 a.m. to 5 p.m. He was repeatedly asked where he was going, why he was going, and if his activities would involve the Christian Socialist Party or any other opposition movement, and was warned that his life would be in danger if he were to take "a false step." He was given his passport and left Nicaragua on November 15, 1985. He entered the United States on December 8, 1985.
 
 DISCUSSION
 
 10
 We review the BIA's denial of asylum for abuse of discretion. Ramos-Vazquez v. INS, 57 F.3d 857, 861 (9th Cir.1995). The BIA's denial of asylum must be upheld if "supported by reasonable, substantial, and probative evidence on the record considered as a whole." 8 U.S.C. § 1105a(a)(4); INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992). Factual findings underlying the decision, including whether the alien has proven a well-founded fear of persecution, are reviewed for substantial evidence. Ghaly v. INS, 58 F.3d 1425, 1431 (9th Cir.1995). This review is extremely deferential, and petitioner "must demonstrate 'that the evidence he presented was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution.' " Id. (quoting Elias-Zacarias, 502 U.S. at 483).
 
 
 11
 The BIA did not abuse its discretion by failing to give sufficient weight to the fact that petitioner's brother and two sisters had been granted asylum in the United States. Petitioner's two sisters were granted asylum on August 14, 1989 and March 5, 1990, and his brother was granted asylum on August 16, 1989, all before Violeta Chamorro assumed the presidency in Nicaragua on April 25, 1990. Petitioner's own application was denied on October 17, 1990. The differential treatment of petitioner's asylum application was appropriate given that the coalition government had assumed power by the time petitioner's asylum application was considered.
 
 
 12
 Substantial evidence supported the BIA's denial of asylum based on its conclusion that petitioner had not shown either past persecution or a well-founded fear of future persecution at the hands of the Sandinistas. While petitioner's testimony about his treatment in Nicaragua could support a finding of past persecution, such a finding is not compelled by the evidence. In Prasad v. INS, 47 F.3d 336, 339 (9th Cir.1995), the petitioner, an ethnic Indian, was stopped at a roadblock by a number of ethnic Fijians, some dressed in military uniforms. He was taken to the police station and interrogated about his support for the ethnic Indian-led Labour Party. At some point, he was hit in the stomach and kicked from behind. After four to six hours, he was released. Prasad believed that if he continued to support the Labour party, he would be beaten and arrested again. Id. at 339. We concluded, however, that "[a]lthough a reasonable petitioner could have found this incident sufficient to establish past persecution, we do not believe that a factfinder would be compelled to do so." Id. at 340.[1] We likewise conclude that petitioner's sustaining a broken nose and cuts on his face as a result of the isolated beating by the group led by Judith Menar, though unfortunate, is not sufficient to overcome the conclusion of the Immigration Judge and the BIA that the petitioner did not suffer past persecution.[2]
 
 
 13
 While petitioner believes that his two friends who were beaten with him were ultimately killed because of their political beliefs, his belief is insufficient to closely tie the persecution to petitioner, as were the allegations regarding a cousin's death in Prasad. See also Arriaga-Barrientos, 937 F.2d 411, 414 (9th Cir.1991) ("The abduction of two geographically distant brothers by unknown gunmen for unknown reasons does not establish a well-founded fear."). Petitioner's eight-hour interrogation before he received his passport did not include any physical violence, and did not constitute persecution. See Prasad, 47 F.3d at 339.
 
 
 14
 Petitioner has also failed to demonstrate a well-founded fear of future persecution. "[T]he petitioner cannot simply prove that there exists a generalized or random possibility of persecution in his native country; he must show that he is at particular risk--that his 'predicament is appreciably different from the dangers faced by [his] fellow citizens.' " Kotasz v. INS, 31 F.3d 847, 852 (9th Cir.1994) (quoting Vides-Vides v. INS, 783 F.2d 1463, 1469 (9th Cir.1986)). Petitioner's evidence regarding the Sandinistas' continued control in Nicaragua is insufficient to make such a particularized showing. Moreover, the fact that petitioner was able to acquire a passport from the government and depart the country, despite the government's alleged knowledge of his political involvement, cuts against a finding of a well-founded fear of governmental persecution. See Rodriguez-Rivera v. INS, 848 F.2d 998, 1006 (9th Cir.1988); Mendez-Efrain v. INS, 813 F.2d 279, 283 (9th Cir.1987).
 
 
 15
 Because petitioner has not demonstrated a well-founded fear of persecution under 8 U.S.C. § 1158(a), he necessarily fails to demonstrate a clear probability of persecution to warrant withholding of deportation under 8 U.S.C. § 1253(h). Ghaly, 58 F.3d at 1429.
 
 CONCLUSION
 
 16
 For the foregoing reasons, we DENY the petition for review of the BIA's decision.
 
 
 
 *
 The panel finds this case appropriate for submission without argument pursuant to Fed.R.App.P. 34(a) and 9th Cir.R. 34-4
 
 
 **
 Hon. Napoleon A. Jones, Jr., United States District Judge for the Southern District of California, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Prasad also testified that ethnic Fijians threw rocks at his house, but did not connect this conduct to the government or establish that the attack was due to race, religion, or political opinion. Id. His wife testified that her cousin's wife was raped by soldiers and that her cousin was murdered. However, she did not establish that these attacks were due to political opinion or race, or that the violence was closely tied to the Prasads. Id
 
 
 [2]
 But see Montoya-Ulloa v. INS, 79 F.3d 930, 931 (1996)