122 F.3d 1073
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Rene Dario RODRIGUEZ-CASTILLO; Lourdes Blanca Nieves
Rodriguez, Petitioners,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 Nos. 96-71075, Agl-zyc-wvl, Azd-zvd-bjz.
 United States Court of Appeals, Ninth Circuit.
 Submitted Aug. 25, 1997.**
Decided Sept. 4, 1997.
 
 On Petition for Review of an Order of the Board of Immigration Appeals
 Before: SCHROEDER, FERNANDEZ, and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Rene Dario Rodriguez-Castillo ("Rene") and his daughter, Lourdes Blanca Nieves Rodriguez ("Lourdes"), natives and citizens of Peru, petition for review of the Board of Immigration Appeals' ("BIA") dismissal of their appeal from the immigration judge's ("IJ") order denying their applications for asylum and withholding of deportation under 8 U.S.C. §§ 1158(a) and 1253(h). We have jurisdiction pursuant to 8 U.S.C. § 1105a(a), and we deny the petition for review.
 
 
 3
 Rene contends that substantial evidence does not support the BIA's determination that he failed to establish past persecution or a well-founded fear of future persecution on account of imputed political opinion or his former membership in a particular social group, the Peruvian Air Force. We disagree.
 
 
 4
 To the extent that the BIA clearly incorporated the IJ's decision as its own, "we treat the IJ's statement of reasons as the BIA's and review the IJ's decision." Alaelua v. INS, 45 F.3d 1379, 1382 (9th Cir.1995). We review the denial of asylum for abuse of discretion, and review the factual findings regarding an applicant's eligibility for asylum under the substantial evidence standard. See Acewicz v. INS, 984 F.2d 1056, 1061 (9th Cir.1993). We will not reverse the BIA's decision unless the evidence "presented was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." INS v. Elias-Zacarias, 502 U.S. 478, 483-84 (1992).
 
 
 5
 To be eligible for asylum, an applicant must demonstrate that he has suffered past persecution or has well-founded fear of future persecution on account of race, religion, nationality, membership in particular social group, or political opinion. See 8 U.S.C. § 1101(a)(42)(A). Persecution is regarded as "an extreme concept," see Ghaly v. INS, 58 F.3d 1425, 1431 (9th Cir.1995), which is broader "than threats to 'life or freedom,' " see INS v. Stevic, 467 U.S. 407, 428 n. 22 (1984). To establish a well-founded fear of persecution, an applicant must show by "credible, direct, and specific evidence," facts which support an objectively reasonable fear. See Acewicz, 984 F.2d at 1061 (citation omitted). A showing of past persecution can give rise to a presumption of a well-founded fear of future persecution. See 8 C.F.R. § 208.13(b)(1)(i) (1997); Singh v. Ilchert, 69 F.3d 375, 378 (9th Cir.1995).
 
 
 6
 While "the military is not a social group qualifying its servicemen or former servicemen for asylum eligibility," Arriaga-Barrientos v. INS, 937 F.2d 411, 414 (9th Cir.1991), "reprisals against former military officers can provide a basis for granting asylum" if the applicant provides objectively reasonable "evidence that he is likely to be singled out for rebel attacks," Chanco v. INS, 82 F.3d 298, 303 (9th Cir.1996); Montecino v. INS, 915 F.2d 518, 520-21 (9th Cir.1990).
 
 
 7
 Rene testified that he spent a life of service in the Peruvian Air Force, and that in 1988 and 1989 he engaged in direct combat missions against the Sendero Luminoso ("Shining Path") guerillas. In September and October of 1989, kidnapping attempts were made on two of his daughters by unidentified men. During October and November of 1989, Rene and his family received numerous threatening telephone calls from the Shining Path, based upon Rene's military involvement. Rene took early retirement from the Air Force, and in February of 1990 he moved to Argentina with his daughter, Ursula. His wife, Olinda, and two other daughters, Lourdes and Flor, remained in Lima.
 
 
 8
 Neither Rene nor his family were ever threatened or harmed while he was in Argentina, but Rene began to fear for his safety and returned to Lima in December of 1990. Rene remained in Lima for about two weeks, then moved his family north to Trujillo, where his parents and other family members lived. Shortly thereafter, Lourdes and Flor returned to Lima to continue their studies. Rene came to the United States in May of 1991. In June or July of 1991, unidentified men attempted to kidnap Lourdes near her home in Lima, but were frightened off by a neighbor. Olinda and Flor moved to Argentina in August of 1991; Lourdes later joined Rene in the United States.
 
 
 9
 We agree with the BIA that the evidence presented does not compel the conclusion that Rene experienced past persecution. See Elias-Zacarias, 502 U.S. at 481; Stevic, 467 U.S. at 428 n. 22; see also Prasad v. INS, 47 F.3d 336, 339 (9th Cir.1995) (defining persecution as the "infliction of suffering or harm upon those who differ ... in a way regarded as offensive."). Thus, he is not entitled to a presumption of a well-founded fear of persecution. See Singh, 69 F.3d at 378.
 
 
 10
 We also find that substantial evidence supports the conclusion that Rene's fear of future persecution is not objectively reasonable. See Acewicz, 984 F.2d at 1061. First, although threatened, there is no evidence that Rene and his family were ever physically abused or harmed by the Shining Path. See Castillo v. INS, 951 F.2d 1117, 1122 (9th Cir.1991) (considering that applicant remained safe after occurrence of event alleged to have induced fear in determining whether applicant's fear was objectively reasonable); Bolanos-Hernandez v. INS, 767 F.2d 1277, 1285 (9th Cir.1985) (evaluating whether the group making the threat has the will to carry it out). Nor does the evidence indicate that the Shining Path has maintained an interest in harming Rene or his family on account of his former military service. See Rodriguez-Rivera v. INS, 848 F.2d 998, 1006 (9th Cir.1988) (per curiam) (holding that a lack of objective evidence alleging that persecutors remained interested in petitioner undermined claim of well-founded fear). Although aware of the threats, Rene's relatives have continued to reside safely in his Lima home for the last several years, and his parents and siblings reside peacefully in northern Peru. See Mendez-Efrain v. INS, 813 F.2d 279, 282 (9th Cir.1987) (stating that family's continued safety in country of origin undercuts applicant's asylum claim). Furthermore, Rene himself resided in Peru, without harm, during the five months prior to his arrival in the United States. See Castillo, 951 F.2d at 1122.
 
 
 11
 One of the reasons Rene fears persecution is due to his belief that the Shining Path was responsible for the 1989 and 1991 kidnapping attempts of his daughters. However, he failed to demonstrate that these events were connected to him or to his military activities. See Ramos-Vasquez v. INS, 57 F.3d 857, 861 (9th Cir.1995); Canas-Segovia v. INS, 970 F.2d 599, 601 (9th Cir.1992) (requiring victim of persecution "to show the persecutor had a protected basis ... in mind in undertaking the persecution"). We note that these events, as well as the threatening phone calls, all occurred prior to the 1992 capture of Abimael Guzman, the founder, leader, and chief strategist of the Shining Path. Rene's claimed fear of future persecution is undermined by evidence of the significant reduction in Shining Path forces and activity following Guzman's imprisonment. See Acewicz, 984 F.2d at 1061; Kazlauskas v. INS, 46 F.3d 902, 906 n. 3 (9th Cir.1995) (stating that fundamental political changes are highly relevant to the likelihood of future persecution).
 
 
 12
 Finally, Rene failed to prove that he is likely to be singled out for persecution. See Chanco, 82 F.3d at 302. While evidence was presented with regard to the current instability and violence in Peru, general conditions of unrest are insufficient to show that Rene would be subject to a "particularized threat of persecution." See Kotasz v. INS, 31 F.3d 847, 851-52 (9th Cir.1994); see also Mendez-Efrain, 813 F.2d at 282 (stating that general level of violence or danger from anti-government forces does not establish persecution).
 
 
 13
 We deny the petition for review because substantial evidence supports the BIA's determination that Rene failed to establish past persecution or a well-founded fear of persecution. See Elias-Zacarias, 502 U.S. at 481. Because Rene failed to qualify for asylum, he necessarily failed to satisfy the higher standard of "clear probability of persecution" as is required for withholding of deportation. See Acewicz, 984 F.2d at 1062.
 
 
 14
 Lourdes seeks asylum on the basis of imputed political opinion, as she contends that she fears future persecution in Peru on account of her father's former military status. However, Lourdes has not demonstrated that a political opinion has been or will be attributed to her by the Shining Path. See Sangha v. INS, 103 F.3d 1482, 1489 (9th Cir.1997). Nor has she established an objectively reasonable fear that she will be persecuted "because of that political opinion." See Elias-Zacarias, 502 U.S. at 483 (emphasis in original). Accordingly, substantial evidence supports the BIA's denial of Lourdes's claim for asylum and withholding of deportation. See id., at 481; Acewicz, 984 F.2d at 1062.
 
 
 15
 PETITION FOR REVIEW DENIED.
 
 
 
 **
 The panel unanimously finds this case suitable for decision without oral argument. See Fed. R.App. P. 34(a); 9th Cir. R. 34-4
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3