Mazen Ayoub ABDELWAHED,
Petitioner,

v.

IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.

No. 99–71662.
I & NS No. A–70–085–508.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 5, 2001.

Decided Nov. 20, 2001.

Before BOOCHEVER and SILVERMAN, Circuit Judges, and GEORGE, District Judge.*

MEMORANDUM **

Mazen Ayoub Abdelwahed petitions this Court for review of the decision of the Board of Immigration Appeals to deny his requests for asylum and withholding of deportation. We deny his petition.

I. BACKGROUND

Abdelwahed was born in Gaza in 1965. At that time, the Gaza Strip was under Egyptian control, but Abdelwahed is not an Egyptian citizen. In the Arab–Israeli War of 1967, Israel occupied the Gaza Strip, but Abdelwahed is not an Israeli citizen. Abdelwahed moved with his family to Saudi Arabia, but they did not obtain Saudi citizenship.

Abdelwahed graduated from King Saud University in 1986. To work in Saudi Arabia, he needed a work card. He start-

ed to work for Bell Canada after graduation on his father's work card, and, after his father died, he obtained his own work card. Bell Canada was in Saudi Arabia on a government project, and when the project concluded in 1989, the company left the country and Abdelwahed lost his job.

Another company, the International Information Trading Company ("International Information Trading"), then hired Abdelwahed. The employment was conditioned upon Abdelwahed's successful transfer of his work card authorization from Bell Canada to International Information Trading in Riyadh. Saudi authorities refused to transfer the authorization, and Abdelwahed lost his job after a couple of months. The dates of these events are unclear, but they occurred no earlier than 1989 and no later than 1991. Abdelwahed did not get another job in Saudi Arabia until he departed in 1991, but there is no evidence that he tried to get another job.

Iraq invaded Kuwait in August 1990. The United States assembled a coalition including Saudi Arabia in opposition. The Palestine Liberation Organization (PLO) aligned itself with Iraq. Abdelwahed claims that the atmosphere in Saudi Arabia became hostile toward Palestinians. He was easily identified as a Palestinian. He wore Western-style clothing, his identification card showed that he was a Palestinian, and Palestinians could reside only in certain areas of Riyadh. Police officers stopped Abdelwahed and questioned him several times, they interrogated him for a couple of hours at a jail, and they told him to stay at home.

In 1990, Abdelwahed obtained a Palestinian refugee travel document from the Egyptian government. In March 1991, he

* The Honorable Lloyd D. George, United States District Judge, District of Nevada, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

left Saudi Arabia and entered the United States. He overstayed his six-month visitor's visa.

An Immigration Judge (IJ) ordered Abdelwahed deported to Israel, because it currently controls the Gaza Strip, or Egypt, because it controlled the Gaza Strip when Abdelwahed was born. Saudi Arabia is also a possible destination, because Abdelwahed resided there last before coming to the United States. Former 8 U.S.C. § 1253(a)(1) (1994). Abdelwahed claimed that he would be subject to persecution if he were deported to Saudi Arabia or to Israel; he thus applied for asylum and for withholding of deportation. The IJ denied Abdelwahed's requests, and the Board of Immigration Appeals (BIA) affirmed. Abdelwahed filed his petition for review on November 30, 1999. We have jurisdiction pursuant to former 8 U.S.C.

## II. ASYLUM

The Court reviews the BIA's factual findings under the "substantial evidence" standard. The Court reviews the BIA's legal interpretations *de novo*. *Singh v. Ilchert*, 63 F.3d 1501, 1506 (9th Cir.1995). Determinations of eligibility for asylum and withholding of deportation are questions of fact, and thus the substantial evidence standard is applicable. *See Prasad v. INS*, 101 F.3d 614, 616–17 (9th Cir. 1996). To obtain a reversal of these determinations, Abdelwahed must show that the evidence would compel any reasonable fact finder that he established eligibility for asylum. *INS v. Elias–Zacarias*, 502 U.S. 478, 481 & n. 1, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992); *Singh v. INS*, 134 F.3d 962, 966 (9th Cir.1998).

The Attorney General may grant asylum to a refugee. 8 U.S.C. § 1158. A refugee is an alien who is unwilling to return to the country of origin "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). Persecution is "the infliction of suffering or harm upon those who differ (in race, religion, or political opinion) in a way regarded as offensive." *Kovac v. INS*, 407 F.2d 102, 107 (9th Cir. 1969). It is "an extreme concept, which ordinarily does not include '[d]iscrimination on the basis of race or religion, as morally reprehensible as it may be.'" *Fisher v. INS*, 79 F.3d 955, 961 (9th Cir. 1996) (quoting *Ghaly v. INS*, 58 F.3d 1425, 1431 (9th Cir.1995)).

Evidence of past persecution leads to a presumption that an alien has a well-founded fear of persecution upon return. *Reyes–Guerrero v. INS*, 192 F.3d 1241, 1244 (9th Cir.1999). In the absence of past persecution, an alien can establish a well-founded fear of persecution by proving that the fear is both subjectively genuine and objectively reasonable. *Id.*

Abdelwahed largely relies upon the State Department's Country Reports on Human Rights for Israel and Saudi Arabia. This Court's review is limited to evidence in the record. Former 8 U.S.C. § 1105a(a)(4); *Velarde v. INS*, 140 F.3d 1305, 1309 (9th Cir.1998); *Gomez–Vigil v. INS*, 990 F.2d 1111, 1113 (9th Cir.1993). Because the Country Reports are not included or mentioned in the record, we do not consider those reports.

Nothing the police did appears to amount to persecution. Abdelwahed's case is similar to *Mendez–Efrain v. INS*, 813 F.2d 279 (9th Cir.1987). Government soldiers detained and interrogated Mendez–Efrain for four days in an attempt to get him to join the army of El Salvador. They did not physically mistreat him. After requests by friends, the soldiers let him go, and Mendez was able to leave El

Salvador unmolested. *Id.* at 282–83. The court found that substantial evidence existed to support the IJ's and BIA's findings that there was no persecution. *Id.* at 283. With the exception that Abdelwahed spent two percent (2%) of the time in jail that Mendez–Efrain did, his claims of detention, interrogation, and warnings to stay at home are indistinguishable from *Mendez–Efrain,* and do not compel a finding of persecution.

Abdelwahed claims that the Saudi government restricted where Palestinians could live. However, he does not claim that these restrictions resulted from the increased tensions after the Iraqi invasion of Kuwait. In fact, he also testified that each nationality had its own neighborhood in Riyadh. This might be discrimination based upon national origin, but it does not compel a finding of persecution. *See Fisher,* 79 F.3d at 961.

Abdelwahed could not work at International Information Trading because Saudi authorities refused to transfer his work card authorization. However, the parties disagree over the relevant dates. Abdelwahed claims that he was terminated from International Information Trading in February 1991. The INS claims that Abdelwahed was terminated in 1989 or 1990. The INS's dates are more likely, because under Abdelwahed's version he would have been unemployed between the Bell Canada and International Information Trading jobs for most or all of 1990 and perhaps part of 1989, and he did not testify to such a lengthy unemployment between the jobs. In any event, it does not matter which side is correct.

"A probability of deliberate imposition of substantial economic disadvantage" is ground for withholding of deportation or granting of asylum. *See Kovac,* 407 F.2d at 107. Assuming for the moment that Abdelwahed's date is correct, he left Saudi Arabia around one month after he lost his job. Not only did he not try to find another job in Saudi Arabia, he never gave himself the chance. Nothing in the record indicates that he could not have found another job. If the Saudi officials told Abdelwahed that he would never again obtain authorization to work in Saudi Arabia, then perhaps a job search would be futile. However, Abdelwahed did not testify that anything like this happened. The evidence in the record does not compel the finding that he was subject to economic persecution.

Assuming that the INS's dates are correct, Abdelwahed's termination was not a result of persecution. If Abdelwahed lost his International Information Trading job in 1989 or any time in 1990 before August, it could not have been as a result of increasing tensions from the PLO's support of Iraq concerning the Kuwait invasion: Iraq did not invade Kuwait until August. Even if Abdelwahed lost his job during or after August 1990, but before February 1991, he still did not try to find other employment.

Abdelwahed also claims that he was easily identified as a Palestinian because his identification card was so marked. Abdelwahed is Palestinian. Just as the passport of an American residing in another country says "United States of America" on the front, or the passport of an alien residing in the United States has the name of his or her country on the front, the identification of a Palestinian residing in Saudi Arabia would logically state that he or she is a Palestinian.

█  Because Abdelwahed did not establish past persecution, the presumption of a well-founded fear of persecution does not operate. The BIA also found that Abdelwahed "provided no evidence that anyone in Saudi Arabia presently has any interest in him." A review of the record bears out

this finding, for Abdelwahed testified only about his experiences in Saudi Arabia up to the time he departed that country. Substantial evidence thus supports the BIA's findings.

Abdelwahed claims that he would be subject to persecution from both Israelis and Palestinians if he were returned to the Gaza Strip. The Palestinians would supposedly consider him to be an Israeli spy and kill him. The Israelis would supposedly persecute him because he has not resided in the Gaza Strip since his infancy. The BIA said that Abdelwahed's claims were mere speculation, and Abdelwahed has not identified any evidence to compel a different conclusion.

## III. WITHHOLDING OF DEPORTATION

Former 8 U.S.C. § 1253(h)(1) (1994) requires the Attorney General to withhold deportation to a country if an alien's "life or freedom would be threatened ... on account of race, religion, nationality, membership in a particular political group, or political opinion." The exceptions in former § 1253(h)(2) are irrelevant to this case.

■ To qualify for withholding of deportation, Abdelwahed must satisfy standards more stringent than for the granting of asylum. *Singh*, 134 F.3d at 962. Consequently, the failure to qualify for asylum is also a failure to qualify for the withholding of deportation. *Id.; Ghaly*, 58 F.3d at 1429. Because Abdelwahed does not qualify for asylum, he also does not qualify for withholding of deportation.

## IV. INTERNATIONAL LAW

Abdelwahed claims that 1951 United Nations Convention Relating to the Status of Refugees ("Convention"), 189 U.N.T.S. 150 (1954), confers upon him the status of refugee, and thus the Immigration Judge should have granted him asylum. The Immigration Judge refused to accept supporting evidence, ruling that she had no jurisdiction over that claim. The United States is not a party to the Convention. However, it is a party to the 1967 United Nations Protocol Relating to the Status of Refugees ("Protocol"), 19 U.S.T. 6223, T.I.A.S. No. 6577, 606 U.N.T.S. 268 (Jan. 31, 1967). The Protocol incorporates by reference Articles 2 through 34 of the Convention; therefore, the United States is effectively a party to those parts of the Convention. *INS v. Aguirre–Aguirre*, 526 U.S. 415, 427, 119 S.Ct. 1439, 143 L.Ed.2d 590 (1999).

■ Congress passed the Refugee Act of 1980 to bring United States law in line with treaty obligations. *INS v. Cardoza–Fonseca*, 480 U.S. 421, 436–37, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987). However, the Protocol itself is not self-executing, and it is only a guide in determining Congressional intent. *Barapind v. Reno*, 225 F.3d 1100, 1107 (9th Cir.2000) (citing *INS v. Stevic*, 467 U.S. 407, 428 n. 22, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984); *United States v. Aguilar*, 883 F.2d 662, 680 (9th Cir. 1989), *cert. denied*, 498 U.S. 1046, 111 S.Ct. 751, 112 L.Ed.2d 771 (1991)). Therefore, the Protocol does not give Abdelwahed any rights beyond what he already enjoys under the immigration statutes.

## V. CONCLUSION

For the foregoing reasons, we deny Abdelwahed's petition for review. Substantial evidence exists to support the BIA's conclusion that he is not entitled to asylum or withholding of deportation. Because it is not self-executing the 1967 United Nations Protocol Relating to the Status of Refugees does not change this conclusion.

PETITION DENIED