Kamla **PRASAD; Meena Kumari Prasad; Catherine Sandhya Prasad; Micky Sudesh Prasad; Ricky Sumit Prasad, Petitioners,**

v.

**IMMIGRATION & NATURALIZATION SERVICE, Respondent.**

No. 94–70132.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 15, 1994.

Decided Feb. 1, 1995.

Alan M. Kaufman, San Francisco, CA, for petitioners.

David M. McConnell and Karen Ann Hunold, U.S. Dept. of Justice, Washington, DC, for respondent.

Before: WALLACE, Chief Judge, PREGERSON and BEEZER, Circuit Judges.

BEEZER, Circuit Judge:

Kamla Prasad, Meena Kumari Prasad and their three children, ethnic Indian citizens of Fiji, petition for review of a decision of the Board of Immigration Appeals ("Board") affirming the Immigration Judge's denial of their application for asylum and withholding of deportation. The Board concluded that the Prasads failed to demonstrate past perse-

cution or a well-founded fear of persecution on account of their race, religion, or political opinion. We have jurisdiction over this timely filed petition pursuant to 8 U.S.C. § 1105a(a). We deny the petition.

## I

Fiji, an island nation in the South Pacific, is composed of a multiracial society divided evenly in population between ethnic Fijians and ethnic Indians. In 1987, Sitiveni Rabuka, an ethnic Fijian military officer, led a coup that overthrew the recently-elected ethnic Indian controlled government. Since 1987, the government of Fiji has been dominated by ethnic Fijians.

Kamla Prasad, who worked in Fiji as a cook and taxi driver, departed Fiji in October of 1987, soon after the coup. His wife and children followed not long after. The Prasads initially applied for asylum in Canada, but eventually entered the United States without inspection in 1991. They sought asylum here. The Immigration Judge and Board both denied their applications, and they petitioned for review.

## II

■ Under 8 U.S.C. § 1158(a), the Attorney General has discretion to grant an alien asylum if the alien is a refugee. Refugees are defined as aliens who are unable or unwilling to return to their country of origin "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A).

■ A well-founded fear of persecution requires examination of both objective and subjective components. *Estrada–Posadas v. INS*, 924 F.2d 916, 918 (9th Cir.1991). The subjective component may be satisfied by credible testimony that the applicant genuinely fears persecution. *Acewicz v. INS*, 984 F.2d 1056, 1061 (9th Cir.1993). The objective inquiry requires "a showing by credible, direct, and specific evidence of facts supporting a reasonable fear of persecution on the relevant ground." *Shirazi–Parsa v. INS*, 14 F.3d 1424, 1427 (9th Cir.1994) (internal quotations and citations omitted).

## III

We begin by addressing apparent confusion regarding the appropriate standard of review for factual asylum decisions of the Board. The Prasads argued that we, in *Ghebllawi v. INS*, 28 F.3d 83 (9th Cir.1994), have taken a position in conflict with that of the United States Supreme Court.

The Supreme Court, in *INS v. Elias–Zacarias*, 502 U.S. 478, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992), set forth the standard of review for appeals from the Board pursuant to 8 U.S.C. § 1105a(a)(4), which provides that the Board's determination regarding a petitioner's asylum eligibility must be upheld if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." In unmistakably clear language, the Court held that in order to obtain reversal, a petitioner must show "that the evidence he presented was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." *Id.* at 483–84, 112 S.Ct. at 817. In at least three other places in its opinion, the Court reiterated and reemphasized this standard. *See id.* at 479, 112 S.Ct. at 814 (relevant question is whether government action "*necessarily* constitute[s] persecution"); *id.* at 481, 112 S.Ct. at 815 (Board can be reversed only if evidence was such that a reasonable factfinder "would have to conclude that the requisite fear of persecution existed"); *id.* at 481 n. 1, 112 S.Ct. at 815 n. 1 (to reverse Board, court must find that evidence "not only *supports* that conclusion, but *compels* it") (emphasis in original).

In *Ghebllawi*, we stated that "we do not find that without saying so the Supreme Court intended to change the normal principles of administrative review" in the context of factual determinations in asylum cases. 28 F.3d at 86. We added that "[n]othing in the text of *Elias–Zacarias* suggests that such a significant change is being effected." *Id.; see also Nasseri v. Moschorak*, 34 F.3d 723, 726 (9th Cir.1994).

In other cases since *Elias–Zacarias*, however, we have acknowledged that the "sub-

stantial evidence" standard means exactly what the Supreme Court said it meant. *See Paredes–Urrestarazu v. INS,* 36 F.3d 801, 816 (9th Cir.1994); *Kotasz v. INS,* 31 F.3d 847, 851 (9th Cir.1994); *Hartooni v. INS,* 21 F.3d 336, 340 (9th Cir.1994); *Shirazi–Parsa v. INS,* 14 F.3d at 1427. *Ghebllawi* and *Nasseri* are not inconsistent with this line of authority. They do, however, leave the impression that the Supreme Court's opinion is not all that important. It is true that *Elias–Zacarias* did not change principles of administrative review in the context of asylum cases. The standard of review has always been, and continues to be, a deferential one. Thus, we agree with *Ghebllawi* to the extent that it recognizes that *Elias–Zacarias* represents the same standard of review previously applied in these cases.

*Elias–Zacarias* did, however, clarify that standard of review. As such, it is important for us to look to the Supreme Court's opinion as the touchstone for reviewing the Board's factual decisions in asylum cases. We need not address what "substantial evidence" means in the myriad other contexts in which it is used. Here, we are concerned only with how it should be interpreted in asylum cases. The Supreme Court's opinion in *Elias–Zacarias* is the definitive statement of "substantial evidence" in the context of the standard of review of factual determinations in asylum cases.

### IV

■ In light of the principles we have discussed above, we now examine the Prasads' petition. They argue that a reasonable factfinder would be compelled to conclude that Kamla Prasad was subject to persecution and had a well-founded fear of persecution on account of race, religion, or political opinion. We disagree.

Kamla Prasad testified in support of his family's application. Neither the Immigration Judge nor the Board questioned Kamla or Meena Prasad's credibility. Thus, we accept the truth of their testimony and examine only whether it is sufficient to establish statutory grounds for asylum.

Prasad contended that in September of 1987, while he was driving his taxi, he was stopped at a roadblock by a number of ethnic Fijians, some of whom were dressed in military uniforms others dressed as civilians. Prasad was taken to a police station, where he was placed in a jail cell. At some point, Prasad was hit on his stomach and kicked from behind. His captors questioned Prasad regarding his support for the ethnic Indian led Labour Party. Although they did not threaten him explicitly, Prasad assumed that if he continued his active support for the Labour Party, he would again be arrested and beaten. After four to six hours, Prasad was released.

■ Persecution has been defined as "the infliction of suffering or harm upon those who differ (in race, religion or political opinion) in a way regarded as offensive." *Desir v. Ilchert,* 840 F.2d 723, 726–27 (9th Cir.1988) (quoting *Kovac v. INS,* 407 F.2d 102, 107 (9th Cir.1969)). Brief detention does not necessarily establish persecution. *Mendez–Efrain v. INS,* 813 F.2d 279, 283 (9th Cir.1987) (alien detained and questioned for four days). We have held, however, that detention combined with physical attacks can, in some circumstances, establish persecution. *Desir,* 840 F.2d at 727.

While we certainly condemn the attack on Prasad, it is not, in our judgment, so overwhelming so as to necessarily constitute persecution by the Fijian Government on account of political opinion or race. The attack was committed by a group of ethnic Fijians, many of whom were dressed in civilian clothes. Prasad was released after the brief detention. He did not require medical treatment. He was not charged with any crime. There is no evidence that the Fijian Government had any continuing interest in Prasad. Indeed, many of the Prasads' relatives still reside in Fiji, apparently without incident. *Desir* is distinguishable. In *Desir,* the petitioner was arrested three times, severely beaten on several occasions, and directly fired upon. *Id.* What occurred to Prasad was far less severe. He was hit and kicked while being briefly detained in a police station. The facts here are not sufficient to compel support for the Prasads' position.

*See Kapcia v. INS,* 944 F.2d 702, 704 (10th Cir.1991) (denial of asylum upheld despite fact that petitioner was "detained for a two-day period during which time he was interrogated and beaten").

Although a reasonable factfinder *could* have found this incident sufficient to establish past persecution, we do not believe that a factfinder would be compelled to do so. We are not permitted to substitute our view of the matter for that of the Board. *See Sanchez–Trujillo v. INS,* 801 F.2d 1571, 1579 (9th Cir.1986); *Kotasz,* 31 F.3d at 851. Thus, we will not disturb the Board's determination that the Prasads failed to demonstrate past persecution or a well-founded fear of future persecution based on this incident.

Other evidence and testimony offered by the Prasads is not enough, either alone or in combination with the above, to compel a factfinder to conclude that persecution or a well-founded fear of persecution existed. Kamla Prasad testified that ethnic Fijians threw rocks at his house and attempted to steal property. He did not, however, allege that these ethnic Fijians were connected to the Fijian Government, nor did he establish that they were singling out the Prasads on account of their race, religion, or political opinion. Prasad also testified that a curfew imposed by the government prevented his family from exercising their religion. Prasad admitted, however, that the curfew was in effect for the entire nation, for all religions. Furthermore, the State Department's Country Report for 1992 indicates that freedom of religion is now protected in the Fijian Constitution and "honored in practice."

Meena Prasad testified that she was harassed by members of the Fijian Army. She gave few specifics, however, regarding these incidents, except that one occurred when soldiers boarded a bus on which she was riding. The soldiers did not detain her or even speak to her directly. Meena Prasad also claimed that her cousin's wife was raped by soldiers and her cousin was murdered. She did not indicate why they were singled out, however, or attempt to establish a connection to the Prasads. Absent some evidence that the cousin was killed because of his political opinion or race, the incident does not support the Prasads' claim. Furthermore, attacks on family members do not necessarily establish a well-founded fear of persecution absent a pattern of persecution tied to the petitioners. *Arriaga–Barrientos v. INS,* 937 F.2d 411, 414 (9th Cir. 1991).

Finally, the Prasads submitted several newspaper articles that discuss poor conditions for, and discrimination against, ethnic Indians. Particularized individual persecution, not merely conditions of discrimination in the country of origin, must be shown before asylum will be granted. *Sanchez–Trujillo,* 801 F.2d at 1574. Additionally, the State Department's Country Report for 1992 indicates that conditions for ethnic Indians in Fiji improved since the time that petitioners departed Fiji.

## V

The Prasads next argue that the Board applied an erroneous legal standard in concluding that their fear of persecution was not objectively reasonable. We disagree. The Board examined whether the Prasads had demonstrated through credible, specific evidence that they had a well-founded fear of persecution. It examined testimony, a State Department Country Report, and other evidence submitted by the Prasads, but found the Prasads claimed fear was not objectively reasonable. The Prasads may disagree with the result of the Board's efforts, but the Board correctly applied the law.

## VI

Because the Prasads failed to demonstrate past persecution or the requisite fear of persecution required for asylum, it follows that they cannot meet the more stringent standard for withholding of deportation. *De Valle v. INS,* 901 F.2d 787, 793 (9th Cir. 1990).

## VII

The Prasads also request attorney's fees pursuant to 28 U.S.C. § 2412(b). That statute provides for an award of fees to a "prevailing party" in a civil action against the

United States. Because the Prasads have not prevailed on appeal, fees are not warranted.

The petition for review is DENIED.

PREGERSON, Circuit Judge, dissenting.

I dissent because Prasad established past persecution on account of his political beliefs. He therefore qualifies as a refugee eligible for asylum under 8 U.S.C. § 1101(a)(42)(A).

As the majority correctly notes, because neither the immigration judge nor the Board of Immigration Appeals (BIA) challenged Prasad's credibility, we must accept his testimony as true. Prasad established that he was an active member of the Labour Party which represents the interests of ethnic Indians on Fiji. Among the hostilities Prasad describes which ensued after the 1987 coup, one incident, in particular, supports Prasad's claim that he has been persecuted. In September 1987, Prasad was arrested while driving his truck in his village. Eight to ten Native Fijians stopped him at a roadblock. At least two were in army uniforms. The Fijians ordered him out of his truck at gunpoint, punched him in the stomach, and kicked him in the back. They then loaded Prasad into another truck and took him to the police station. At the police station, his captors accused him of being a Labour Party member. They interrogated him about his support for the Labour Party and his work distributing pamphlets. Army personnel locked Prasad in a cell for four to six hours. When they released him, they warned him that if he worked for the Labour Party again, he would be arrested. When Prasad reported this incident to the police, they refused to respond because Prasad was a member of the Labour Party.

The majority's conclusion that Prasad was not persecuted on account of his political beliefs is not supported by the facts of this case or the law of this circuit. As the majority states, this court has defined persecution to be the "infliction of suffering or harm upon those who differ (in race, religion, or political opinion) in a way regarded as offensive." *Cardoza–Fonseca v. INS,* 767 F.2d 1448, 1452 (9th Cir.1985). The majority's finding that Prasad was not persecuted flies

in the face of this clear and accepted definition. The record shows that Prasad was clearly "harm[ed]" and made to "suffer[ ]" because of his political beliefs. Fijian army personnel and others punched, kicked, interrogated, and imprisoned Prasad specifically because he supported the Labour Party. The facts could not be more clear—Prasad was harmed and he suffered. The record would compel any reasonable fact-finder to conclude that Prasad was persecuted. *See Elias–Zacarias,* 502 U.S. 478, 483, 112 S.Ct. 812, 817, 117 L.Ed.2d 38 (1992); *Shirazi–Parsa,* 14 F.3d 1424, 1427 (9th Cir.1994).

The majority relies on *Mendez–Efrain v. INS,* 813 F.2d 279 (9th Cir.1987) for the proposition that a brief detention does not constitute persecution. *Mendez–Efrain* is inapposite. There we found no past persecution of a petitioner who was detained by the Salvadoran military for four days. We failed to find persecution, however, not because of the length of the detention, but because the detainee was let go unharmed and allowed to leave the country shortly after. *Id.* at 283. Prasad, on the other hand, was beaten and threatened.

Prasad's case is more akin to *Del Valle v. INS,* 776 F.2d 1407, 1412 (9th Cir.1985). In *Del Valle,* we found past persecution of an alien who was blindfolded, interrogated and beaten by security forces. As in Prasad's case, the petitioner in *Del Valle* was hurt, but held for fewer than twenty-four hours.

While it is true that in *Desir v. Ilchert,* 840 F.2d 723, 729 (9th Cir.1988), the petitioner who we found had been "persecuted" reported more incidents of beating and detention than did Prasad, that does not preclude us from applying the plain definition of persecution to Prasad's case and concluding that it was met. In the end, the majority relies on out of circuit law to support its conclusion that being beaten and detained does not amount to persecution.

I believe that we should reverse the BIA's finding of no past persecution.