65 F.3d 175
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Sundar SINGH; Jagjeet Kaur Singh; Gurminder Sanjay Singh;
Harmindar Singh; Salindar Singh, Petitioners,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 95-70450.
 United States Court of Appeals, Ninth Circuit.
 Submitted Aug. 16, 1995.*
Decided Aug. 23, 1995.
 
 Before: ALARCON, FERNANDEZ, and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Sundar and Jagjeet Kaur Singh and their three children Gurminder Sanjay, Harmindar, and Salindar Singh ("the Singhs"), ethnic Indian citizens of Fiji, petition for review of a decision of the Board of Immigration Appeals ("BIA") affirming the Immigration Judge's ("IJ") denial of their applications for asylum and withholding of deportation. We have jurisdiction pursuant to 8 U.S.C. Sec. 1105a(a), and we deny the petition for review.
 
 
 3
 * Background
 
 
 4
 Mr. Singh served as a member of the Royal Fijian Police force for approximately 22 years, rising to the rank of sergeant in the traffic department. In this position, he supervised 33 officers.
 
 
 5
 In 1987, several coups occurred in Fiji, due, in part, to the cultural and political tensions between the ethnic Indian and ethnic Fijian populations in Fiji. Mr. Singh contends that during and after these coups, he was subject to discrimination and persecution by his superiors and colleagues in the police department who were ethnic Fijian. Specifically, Mr. Singh testified that he was denied promotion and given undesirable nighttime shifts because he was an ethnic Indian. Mr. Sigh also testified that he was subject to aggressive and demeaning behavior by ethnic Fijian officers. Mr. Singh stated that on three occasions he was threatened by ethnic Fijian soldiers who were driving drunk or were involved in traffic accidents and that he was unable to fulfill his police function because of these threats and intimidations. Mr. Singh conceded that he was not demoted or forced to resign from his position in the police department.
 
 
 6
 Mr. Singh also testified that his government-provided house was stoned by ethnic Fijians, his car vandalized, and his house burglarized on numerous occasions. He also stated that when he reported these incidents to his superiors at the police department, no action was taken. Mr. Singh also testified that ethnic Fijian children were given easier access to educational opportunities and that his children were harassed by the ethnic Fijian children at school.
 
 
 7
 Mr. Singh, a member of the Sikh religion, stated that his house of worship had been burned to the ground after the coup by ethnic Fijians, but that it was subsequently rebuilt.
 
 
 8
 In 1991, Mr. Singh resigned his position in the police force after entering the United States. Arrangements were made for his pension benefits and accumulated leave to be given to him.
 
 
 9
 The IJ found that despite the discrimination suffered by Mr. Singh, neither he nor his family had not suffered past persecution or had established a well-founded fear of future persecution warranting asylum or withholding of deportation. The IJ did, however, grant them voluntary departure.
 
 
 10
 The BIA affirmed the IJ's decision and the Singhs timely appeal.
 
 II
 Analysis
 A. Appropriate Legal Standard
 
 11
 On petition for review, the Singhs contend that the BIA erred by requiring them to show a direct "threat" against them or that someone in Fiji had a "continuing interest" in persecuting them. This contention lacks merit.
 
 
 12
 First, the BIA's decision merely observed that the Singhs had produced no evidence that anyone in Fiji had a continuing interest in them. It did not state that a successful application for asylum was predicated on such a finding. See e.g., Prasad v. INS, 47 F.3d 336, 339 (9th Cir.1995) (in reviewing BIA's denial of asylum to an ethnic Indian from Fiji, we observed that "[t]here was no evidence that the Fijian Government had any continuing interest in [the alien]"). Thus, the mere inclusion of this information in the BIA's decision does not require us to remand the case to the BIA.
 
 
 13
 Second, "[a] requirement that the alien show that he faces a particularized threat of persecution ... is encompassed within the well-founded fear standard." Kotasz v. INS, 31 F.3d 847, 851-52 (9th Cir.1994). "The underlying idea ... [is that the alien] cannot simply prove that there exists a generalized or random possibility of persecution in his native country; he must show that he is at particular risk." Id. at 852.
 
 
 14
 An alien, however, need not show that "he would be singled out individually for persecution if ... there is a pattern or practice of persecution ... of groups of persons similarly situated [based on one of the enumerated grounds] and alien "establishes his own inclusion" in the group "such that his fear of persecution upon return is reasonable." 8 C.F.R. Sec. 208.13(b)(2)(i); Kotasz, 31 F.3d at 852-53; Bolanos-Hernandez v. INS, 749 F.2d 1316, 1324 (9th Cir.1984) (evidence of persecution of similarly situated person may be used to establish well-founded fear of persecution); Zavala-Bonilla v. INS, 730 F.2d 562, 565 (9th Cir.1984).
 
 
 15
 This "group" of similarly situated persons is not the same as the more limited "social group" category enumerated in the asylum statute. See Kotasz, 31 F.3d at 852 n. 7. Thus, if an alien can show a "pattern or practice" of persecution against a group and that he is a member of the group, then the alien may be eligible for asylum. See id. at 853. If the alien is a member of a "disfavored" group, but the group is not subject to systematic persecution, we will look to (1) the risk level of membership in the group (i.e., the extent and the severity of persecution suffered by the group) and (2) the alien's individual risk level (i.e., whether the alien has a special role in the group or is more likely to come to the attention of the persecutors making him a more likely target for persecution). See id. The relationship between these two factor is correlational; the more serious and widespread the threat of persecution to the group, the less individualized the threat of persecution need be. Id. at 853-54.
 
 
 16
 Here, the Singhs, as ethnic Indians and Sikhs from Fiji, are members of a disfavored group. Thus, the Singhs are not eligible for asylum based solely on their membership in the group, but rather based on their membership in the group and on their individual risk level. See id. Accordingly, the BIA did not err by finding that the Singhs need to show more than generalized discrimination and violence against ethnic Indians or Sikhs in Fiji. See id.
 
 B. Well-Founded Fear of Persecution
 
 17
 We review the BIA's factual determinations, including whether the alien has demonstrated a "well-founded fear of persecution," under the substantial evidence standard. See INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992); Ghaly v. INS, No. 93-70926, slip op. 7801, 7807-08 (9th Cir. July 6, 1995). We will uphold the BIA's decision unless an alien demonstrates "that the evidence he presented was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." Elias-Zacarias, 502 U.S. at 483-84.
 
 
 18
 To qualify for asylum, an alien must demonstrate that he has a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. Secs. 1158, 1101(a)(42); Berroteran-Melendez v. INS, 955 F.2d 1251, 1255 (9th Cir.1992).
 
 
 19
 Persecution is defined as "the infliction of suffering or harm upon those who differ (in race, religion or political opinion) in a way regarded as offensive." Desir v. Ilchert, 840 F.2d 723, 727 (9th Cir.1988). Persecution, however, "does not include every sort of treatment our society regards as offensive." Fisher v. INS, 37 F.3d 1371, 1380 (9th Cir.1994). "Discrimination on the basis of race or religion, as morally reprehensible as it may be, does not ordinarily amount to 'persecution.' " Ghaly, No. 93-70926, slip op. at 7808. Thus, "persecution, not merely conditions of discrimination in the country of origin, must be shown before asylum will be granted." Prasad, 47 F.3d at 339 (BIA did not err by finding that ethnic Indian from Fiji failed to establish well-founded fear of persecution despite brief detention and beating by Fijian authorities investigating alien's political activities and stoning of alien's house and attempt to steal property by ethnic Fijians).
 
 
 20
 A well-founded fear of persecution has both objective and subjective components. Estrada-Posadas v. INS, 924 F.2d 916, 918 (9th Cir.1991). The subjective component may be satisfied by "an applicant's credible testimony that he genuinely fears persecution." Acewicz v. INS, 984 F.2d 1056, 1061 (9th Cir.1993). The objective inquiry "requires a showing by credible, direct, and specific evidence of facts supporting a reasonable fear of persecution on the relevant ground." Shirazi-Parsa v. INS, 14 F.3d 1424, 1427 (9th Cir.1994) (internal citations and quotations omitted).
 
 
 21
 The Singhs contend that the BIA erred by finding that they failed to meet their burden of establishing a well-founded fear of persecution. This contention lacks merit.
 
 
 22
 While the Singhs may have a subjective fear of persecution upon their return to Fiji, they did not present specific evidence to support an objectively reasonable, well-founded fear of persecution. See Prasad, 47 F.3d at 339; Shirazi-Parsa, 14 F.3d at 1427. Moreover, the facts here are not sufficient to support a claim of past persecution. Cf. Prasad, 47 F.3d at 339. Thus, the BIA did not err by affirming the IJ's denial of asylum. See Kotasz, 31 F.3d 847, 851 (9th Cir.1994); Abedini, 971 F.2d at 191. Accordingly, we deny the petition for review.[1]
 
 
 23
 On April 10, 1995, the Singhs filed a motion to hold this petition for review in abeyance pending the outcome of their motion to reopen. We have the power to stay our proceedings; it is not, however, looked upon favorably except in extraordinary circumstances. Berroteran-Melendez, 955 F.2d at 1254-55. Accordingly, we deny their motion.
 
 
 24
 PETITION FOR REVIEW DENIED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4. Accordingly, the Singhs' request for oral argument is denied
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 To qualify for withholding of deportation, an alien must meet a higher standard and present evidence of a clear probability of persecution based on one of the five asylum grounds. INS v. Stevic, 467 U.S. 407, 430 (1984); 8 U.S.C. Sec. 1253(h). Because the standard for withholding of deportation is higher than the standard for a grant of asylum, the BIA also did not err by affirming the IJ's denial of withholding of deportation. See Acewicz, 984 F.2d at 1062