117 F.3d 1424
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Simona AGIU, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 Nos. 96-70551, Auy-rnx-vjv.
 United States Court of Appeals, Ninth Circuit.
 Submitted June 17, 1997.**
Decided June 24, 1997.
 
 On Petition for Review of an Order of the Board of Immigration Appeals.
 Before: GOODWIN, SCHROEDER, and TASHIMA, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Simona Agiu, a native and citizen of Romania, petitions for review of the Board of Immigration Appeals' ("BIA") decision affirming an immigration judge's ("IJ") denial of her applications for asylum and withholding of deportation under sections 208(a) and 243(h) of the Immigration and Nationality Act, 8 U.S.C. §§ 1158(a), 1253(h). We have jurisdiction pursuant to 8 U.S.C. § 1105a(a), and we deny the petition for review.
 
 
 3
 Agiu contends that the BIA erred by finding that she neither suffered past persecution nor had a well-founded fear of future persecution based on her opposition to the Iliescu government, her membership in the intelligensia, and her nationality because she is married to an ethnic Russian. We disagree.[1]
 
 
 4
 We review the BIA's asylum eligibility determinations for substantial evidence. See INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992). We may not reverse the BIA's decision unless a petitioner demonstrates that the evidence she presented was so compelling that no reasonable fact-finder could fail to find the requisite fear of persecution. See id.
 
 
 5
 To be eligible for a grant of asylum, a petitioner must demonstrate that she has suffered past persecution, or has a well-founded fear of future persecution, on account of race, religion, nationality, membership in a particular social group, or political opinion. See 8 U.S.C. § 1101(a)(42)(A). A well-founded fear of future persecution must be subjectively genuine and objectively reasonable. See Prasad v. INS, 47 F.3d 336, 338 (9th Cir.1995). The objective component "requires a showing by credible, direct, and specific evidence of facts supporting a reasonable fear of persecution on the relevant ground." Id. (internal quotation marks omitted).
 
 
 6
 Agiu testified before the IJ that in 1967 the government confiscated her family's home because of her mother's anti-communist views and that while in junior high school, Agiu was not permitted to travel to neighboring countries with fellow students. Agiu further testified that the government denied her application to study law and she obtained a teaching degree instead. The only teaching job Agiu was offered upon graduation was in a remote and undesirable location because she refused to join the Communist Party. Instead, Agiu testified she remained in Bucharest and worked for a printing company and then as a translator for the Economics Ministry. Agiu further testified that shortly after the Ceausescu government was overthrown in December of 1989, she joined the National Liberal Party in order to voice opposition to the newly formed Iliescu government. Agiu participated in several anti-government demonstrations and in June of 1990, Agiu testified that miners, operating at the behest of the government to disrupt the demonstrations, threw rocks and broke all the windows of her apartment which was located near the site of the demonstrations and from which an anti-Iliescu banner was displayed. Agiu further testified that the next day she was attacked and injured by miners as she walked through the demonstration site. Agiu stated that in September of 1990, her employer warned her to stop speaking out against the Iliescu government or she would be fired. In February of 1991, Agiu was fired after she applied for a United States visa although she believes it was because of her political views and because she failed to answer questions about why her mother immigrated to the United States.
 
 
 7
 Agiu's husband testified that he suffered discrimination because of his Russian heritage. Mr. Agiu further testified that he was fired from his job after his wife left Romania although the firing occurred after he had applied for a United States visa.
 
 I Past Persecution
 
 8
 We agree with the BIA's conclusion that the incidents described by Agiu and her husband do not establish persecution on any of the enumerated grounds. See Kazlauskas v. INS, 46 F.3d 902, 906-07 (9th Cir.1994). Although pro-government miners broke the windows of Agiu's apartment during a riot and then injured her as she walked through the demonstration site, Agiu failed to present any evidence to show she was subject to a particular risk or that she was singled out for persecution by the miners. See Kotasz v. INS, 31 F.3d 847, 851-52 (9th Cir.1994) (finding that petitioner who was detained, beaten and harassed by police for several days on four occasions was subject to particular risk). Agiu's inability to study law or obtain a teaching position in Bucharest do not demonstrate persecution. See Kazlauskas, 46 F.3d at 907 (holding that harassment, ostracism and inability to advance to university do not amount to past persecution); see also Saballo-Cortez v. INS, 761 F.2d 1259, 1264 (9th Cir.1984) (finding denial of food discounts and work permit for other type of employment do not establish persecution). Furthermore, the BIA was not compelled to find Agiu was persecuted when she was fired from her job without evidence of the government's deliberate imposition of substantial economic disadvantage. See Kovac v. INS, 407 F.2d 102, 107 (9th Cir.1969).
 
 II Future Persecution
 
 9
 We also agree with the BIA's conclusion that Agiu did not present evidence to show that she has a well-founded fear of future persecution. See Prasad, 47 F.3d at 338. Although she was fired after she applied for a visa, Agiu was permitted to work for the government for a year while she expressed anti-government views, she was issued a passport, and she was able to leave the country without incident. See Saballo-Cortez, 761 F.2d at 1264 (finding permission to work and granting of passport and exit visa undercut petitioner's claim of fear of persecution). Furthermore, while miners broke her windows and injured her, neither incident compels a finding that she would be singled out for harm if she returned to Romania. See Prasad, 47 F.3d at 340.
 
 
 10
 The BIA was not compelled to find that Agiu demonstrated a well-founded fear of persecution. See id. Because Agiu failed to demonstrate past persecution or a well-founded fear of future persecution, she also failed to demonstrate eligibility for withholding of deportation. See id.
 
 
 11
 PETITION FOR REVIEW DENIED.
 
 
 
 **
 The panel unanimously finds this case suitable for decision without oral argument. See Fed. R.App. P. 34(a); 9th Cir. R. 34-4
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 To the extent that Agiu contends that the IJ erred by stating that he was bound by the State Department advisory opinion, any error was rendered harmless by the BIA's independent review of the evidence. See Ghaly v. INS, 58 F.3d 1425, 1430 (9th Cir.1995)