**Eyad Gamal EL BITAR, Petitioner,**

v.

**John ASHCROFT, Attorney General, Respondent.**

No. 03–70898.

United States Court of Appeals, Ninth Circuit.

Submitted Sept. 1, 2004.*

Decided Sept. 9, 2004.

Steve Paek, Law Office of Steve Paek, Los Angeles, CA, for Petitioner.

Regional Counsel, Western Region Immigration & Naturalization Service, Laguna Niguel, CA, Ronald E. Lefevre, Chief Legal Officer, Office of the District Counsel Department of Homeland Security, San Francisco, CA, Genevieve Holm, Esq., Michael T. Dougherty, U.S. Department of

* This panel unanimously finds this case suitable for decision without oral argument. See

Fed. R.App. P. 34(a)(2).

Justice Civil Div./Office of Immigration, Washington, DC, for Respondent.

Before: REINHARDT, TASHIMA, and WARDLAW, Circuit Judges.

MEMORANDUM **

Eyad El Bitar is a stateless native of Saudi Arabia of Palestinian descent. El Bitar petitions for review of the Board of Immigration Appeals' ("BIA") affirmance without opinion of the Immigration Judge's ("IJ") final order denying his application for asylum and withholding of removal. We have jurisdiction pursuant to 8 U.S.C. § 1252, and we deny the petition.

■ El Bitar seeks asylum and withholding of removal on the ground that his stateless status itself is a violation of the Universal Declaration of Human Rights, and that because he is stateless Saudi Arabia has denied him a series of rights, including the right to re-enter the country, despite having been born there, the right to attend a Saudi Arabian university and the right to employment without a Saudi Arabian sponsor. Although El Bitar was born in Saudi Arabia, he is not a citizen because his father is Palestinian; therefore, when he left the country to travel to the United States under the auspices of his employer, but was subsequently fired by that employer, he was not allowed to obtain a visa to return. Furthermore, El Bitar is unable to obtain a worker's residency because Saudi Arabia requires that he first obtain a degree from a foreign university, which El Bitar claims he cannot afford. El Bitar testified, however, that he is not "afraid of torture and things like

that" and that the situation in Saudi Arabia is the same for all non-citizens of the country, not just stateless Palestinians.

Because the IJ did not make an adverse credibility finding, we accept El Bitar's testimony as true. See Navas v. INS, 217 F.3d 646, 652 (9th Cir.2000). Nonetheless, El Bitar does not meet the requirements for asylum or withholding of removal.

"Statelessness alone does not warrant asylum." Faddoul v. INS, 37 F.3d 185, 190 (5th Cir.1994), rejected in part on other grounds by Pitcherskaia v. INS, 118 F.3d 641, 648 n. 9 (9th Cir.1997); see also 8 U.S.C. 1101(a)(42)(A) ("The term 'refugee' means ... any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion."). Because a person having no nationality is included amongst those who must show persecution under the statute, lack of nationality alone cannot constitute persecution.

■ Nor does the discrimination based on El Bitar's non-citizenship rise to the level of persecution. El Bitar testified that his father—who is also of Palestinian descent—was able to work for 25 years in Saudi Arabia on a worker's visa. He also testified that if he obtains a university degree from a foreign university, he may be able to obtain a worker's visa. In Prasad v. INS, we held that "[p]articularized individual persecution, not merely

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

conditions of discrimination in the country of origin, must be shown before asylum will be granted." 47 F.3d 336, 340 (9th Cir.1995). Furthermore, in *Li v. INS*, 92 F.3d 985, 987 (9th Cir.1996), we quoted *Faddoul*'s holding that "[e]ducation, although undeniably important, is a matter of governmental policy rather than a fundamental right." 37 F.3d at 189.

This case is factually distinct from *El Himri v. Ashcroft*, No. 03–71152, 2004 WL 1879255 (9th Cir. August 24, 2004), in which we recently granted asylum and withholding of removal in a case involving stateless Palestinian natives of Kuwait. In *El Himri*, the IJ had found that after the Iraq–Kuwaiti war, Kuwait had embarked on a

> systematic effort to decrease its population of non-Kuwaiti residents.... Through forced expulsions, extreme persecution and discrimination, Kuwait decreased its Palestinian population from a pre-war total of 350,000 to a current population of about 35,000.... Palestinians who remained in the country were denied the right to work, go to school, or even obtain drinking water.... [T]he government remains reluctant to issue work permits to the Palestinians still living in Kuwait. Non–Kuwaitis, especially those of targeted ethnicities, such as Palestinians, have a heightened risk of abuse by the police. As a Palestinian woman, Haifa El Himri testified credibly that she would have a high risk of rape if she were to return to Kuwait.

*Id.* at *3. We further found that the El Himris "would not be able to avoid the state-sponsored economic discrimination that has been enacted against Palestinians living in Kuwait since the end of the Gulf War." *Id.* *4. "In sum ... Kuwait's policies toward its Palestinian residents in effect make it impossible for them to continue living in Kuwait." *Id.* at *3 (internal quotation marks and citation omitted). El Bitar offered no evidence that Palestinians are treated differently than other non-citizens in Saudi Arabia or even that there has been any particularly hostile treatment of Palestinians. Without such evidence, we are unable to determine what components of Saudi Arabia's treatment is due to El Bitar's Palestinian background as opposed to Saudi Arabia's general immigration policy.

The "extreme economic discrimination" and targeted abuse demonstrated in *El Himri* simply is not present here. El Bitar was able to find work, despite his lack of worker's residency, and lost his job not due to government persecution but rather as a result of nonperformance of his duties. He may well be able to obtain new, albeit unofficial, employment if he returns to Saudi Arabia and has offered no evidence to the contrary. He has not testified that he faces a high risk of physical abuse, or that he will be denied basic necessities, such as water. As in *Prasad* and *Faddoul*, El Bitar cannot show that he has been singled out for differential treatment on the basis of his nationality or ethnicity, or that the hardships he faces constitute persecution per se. In *Ghaly v. INS*, 58 F.3d 1425, 1431 (9th Cir.1995), we "cautioned that 'persecution is an extreme concept that does not include every sort of treatment our society regards as offensive.'" Therefore, El Bitar has not demonstrated that Saudi Arabia has or will persecute him on account of his "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. 1101(a)(42)(A).

**PETITION DENIED.**