

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-13-2006

# Zheng v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-1375

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Zheng v. Atty Gen USA" (2006). *2006 Decisions.* Paper 1451.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1451

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-1375

XIANG ZHENG,

Petitioner

v.

ATTORNEY GENERAL OF
THE UNITED STATES,*

Respondent

*Caption Amended Pursuant to Rule 43(c), F.R.A.P.

On Petition for Review of an Order of
The Board of Immigration Appeals
(No. A95-100-926)

Submitted Under Third Circuit LAR 34.1(a)
March 7, 2006

Before: RENDELL and AMBRO, <u>Circuit Judges</u>,
SHAPIRO,** <u>District Judge</u>

(Opinion filed: March 13, 2006)

---

** Honorable Norma L. Shapiro, Senior District Judge for the Eastern District of
Pennsylvania, sitting by designation.

OPINION

AMBRO, <u>Circuit Judge</u>

　　Xiang Zheng petitions for review of a decision of the Board of Immigration Appeals ("BIA") that affirmed an oral decision of an Immigration Judge ("IJ") denying his application for asylum and withholding of removal and his request for relief under the Convention Against Torture ("CAT"). The IJ concluded that Zheng had not offered a credible account of adverse treatment that would constitute persecution within the meaning of the Immigration and Nationality Act ("INA"), and therefore concluded that he failed to establish eligibility for asylum and, by extension, withholding of removal under the INA or relief under the CAT. We conclude that the IJ's oral decision is supported by substantial evidence, and therefore deny the petition for review.

## I.

　　Because we write for the parties, we only briefly recount the relevant facts. Zheng is a native and citizen of the People's Republic of China. He entered the United States through Puerto Rico on September 4, 2003, using a fraudulent Canadian passport. He was detained and, in two interviews with immigration officers, stated that he fled from China after Chinese family planning officers arrested him for cohabiting with his girlfriend before marriage. Zheng was placed in removal proceedings and filed an application for asylum and withholding of removal on February 19, 2004.

Zheng's application contained very few details of what allegedly happened to him in China. In a short, one-paragraph statement attached to the application, Zheng alleged that he and his girlfriend began living together in 2002, and were arrested by family planning officials in March 2003 because China's family planning laws forbid cohabitation before marriage. The officials allegedly detained Zheng and his girlfriend at a "family planning office," and allowed him to leave once a friend posted bail. As a condition of his release, Zheng was ordered to report to the office every day, but he failed to do so. Because of this, family planning officers allegedly went to his parents' home and threatened them. Zheng also stated that he lost his job as a result of his detention. He asserted that, if returned to China, he would be arrested "because [he] violated [the] family planning policy and left China illegally."

On the same day he filed his asylum application, Zheng appeared before an IJ and conceded removability. Zheng was the only witness at the hearing and, through his testimony, attempted to establish additional details regarding his claim. He testified, for example, that family planning officers hit him in the face while he was detained, and that he did not know what became of his girlfriend. He also stated that, upon being released, he hid with friends and relatives for several months before traveling to Singapore, then to France, and then to several Carribean islands (including Martinique, the Dominican Republic, St. Kitts, and Nevis) before finally arriving in Puerto Rico. Upon questioning, he testified that he did not apply for asylum in any of these countries because he did not think of it and, in any event, he had family in the United States (including a brother and

uncle, neither of whom testified at the hearing) and therefore wanted to come here. Zheng also stated that he worked in China as a "technician" at a private corporation, but after his arrest his supervisor informed him that the government had taken his personnel file and therefore he could no longer work at the company.

At the close of the hearing, the IJ issued an oral decision denying Zheng's application for asylum and withholding of removal and his request for relief under the CAT. The IJ concluded that Zheng's claim was not credible for a number of reasons. First, the IJ found it highly doubtful that, if Zheng was truly in need of protection from persecution, he would pass through Singapore, France, and four Carribean islands without seeking asylum. Second, the IJ found that the U.S. State Department's Country Report for China called into question Zheng's testimony, insofar as the Country Report established that (1) there was no provision in China's family planning laws that would allow the arrest and detention of an unmarried, cohabiting couple with no children, and (2) Chinese citizens who were labeled "bad elements" by the government were not prohibited from working in private sector jobs, which cast doubt on Zheng's testimony that his private employer fired him because he was arrested. Third, the IJ noted that Zheng never mentioned the only allegation of violence — the beating by family planning officials while he was detained — during his initial interviews with immigration officers upon his arrival in Puerto Rico, and only brought it up during his testimony before the IJ. This, the IJ found, rendered his story regarding the beating not credible. Finally, the IJ noted that, even if Zheng's allegations were true, they would not amount to persecution

4

within the meaning of the INA.

Zheng appealed to the BIA, which summarily affirmed the IJ without opinion on January 26, 2005. He then filed a timely petition for review by our Court.

## II.

We have jurisdiction over Zheng's petition under 8 U.S.C. § 1252(b)(2) and (d). Where, as here, the BIA summarily affirms the IJ's oral decision and adopts that decision as the final agency action, we review the IJ's decision directly. See Xie v. Ashcroft, 359 F.3d 239, 242 (3d Cir. 2004). The IJ's factual findings, including her determination of whether an alien was subject to persecution or has a well-founded fear of persecution, are reviewed under a substantial evidence standard. Shardar v. Ashcroft, 382 F.3d 318, 323 (3d Cir. 2004). The IJ's credibility determinations are also reviewed under this standard. Cao v. Att'y Gen., 407 F.3d 146, 152 (3d Cir. 2005). In conducting this analysis we consider the record as a whole and will reverse only if "'[a] reasonable adjudicator would be compelled to conclude to the contrary.'" Shardar, 382 F.3d at 323 (quoting 8 U.S.C. § 1252(b)(4)(B)).

## III.

We conclude that substantial evidence supports the IJ's denial of Zheng's request for asylum. First, the IJ correctly pointed to significant discrepancies in the record that contradicted, or at least called into question, Zheng's testimony. We have stated that "[a]dverse credibility determinations based on speculation or conjecture, rather than on evidence in the record, are reversible." Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir.

2002). Although "minor inconsistencies and minor admissions that reveal nothing about an asylum applicant's fear for his safety are not an adequate basis for an adverse credibility finding," we uphold credibility determinations that involve the "heart of the asylum claim" and are supported by substantial evidence such that a reasonable adjudicator would not be compelled to reach a contrary result. Id. (citations and internal quotation marks omitted).

The adverse credibility findings at issue here are neither speculative nor related to minor inconsistencies. Zheng stated, for example, that he was forced to flee from China to escape persecution, but then traveled through several countries where he could have sought asylum or other protection before arriving in the United States. The IJ concluded, and we agree, that it appears from these facts more likely that Zheng traveled to the United States to join his family members already living here, rather than to escape legitimate persecution. Zheng also testified that he was arrested in China because it was unlawful to live with his girlfriend before marriage, but the relevant Country Report relates no incidents of such arrests, and its description of China's family planning laws does not state that family planning officials are authorized to arrest or detain unmarried couples who have no children. As for the only act of violence that Zheng allegedly suffered, we agree with the IJ that Zheng's failure to mention it to immigration authorities during his initial interviews, and his failure to mention it in his asylum application, cast doubt on the credibility of his story. See Dong v. Ashcroft, 406 F.3d 110, 112 (2d Cir. 2005) (per curiam) (holding that the omission of critical details regarding an alien's

persecution claim from an asylum application may support an adverse credibility finding).

Because these inconsistencies could lead a reasonable adjudicator to reject the veracity of Zheng's claims, we will not overturn the IJ's credibility determinations.

Second, we note that, even if all of Zheng's allegations were true, they would not rise to the level of persecution. To succeed in establishing eligibility for asylum or withholding of removal, Zheng must first demonstrate that he has been subject to past persecution or has a well-founded fear of future persecution based on his race, religion, nationality, membership in a particular social group, or political opinion. See, e.g., Li v. Att'y Gen., 400 F.3d 157, 162 (3d Cir. 2005) (quoting 8 U.S.C. § 1101(a)(42)(a)). We have defined persecution as "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." Id. at 167 (citation and internal quotation marks omitted). Here, even if all of Zheng's allegations are true, he has not alleged adverse treatment that rises to this level. It is not within the power or competence of this Court to question China's law regarding who can live with whom, and certainly a single incident of arrest for violating that law, even if the arrest resulted in detention (during which the person was hit in the face) and the loss of a job, is not "persecution" sufficient to render the individual eligible for asylum.[1] We therefore

---

[1] We note that, although acts of violence committed by government officials are always troubling, courts are generally reluctant to find that a single incident of violence that did not cause lasting harm to the victim constitutes persecution. See, e.g., Quevedo v. Ashcroft, 336 F.3d 39, 45 (1st Cir. 2003) (holding that a single beating at the hands of soldiers, "while undoubtedly terrifying, does not rise to the level of severity necessary for a court of appeals to set aside the [IJ's] conclusion" that the petitioner was not

7

perceive no error in the IJ's conclusion that Zheng has not been persecuted within the meaning of the INA.

Because we conclude that Zheng has not satisfied his burden of proving past persecution or a well-founded fear of future persecution sufficient to qualify for asylum, we necessarily conclude that he has not satisfied the more stringent requirements for withholding of removal. See Paripovic v. Gonzales, 418 F.3d 240, 246 (3d Cir. 2005). As for his CAT claim, we disagree with the IJ that Zheng's failure to prove persecution necessarily means he also failed to establish eligibility for relief under the CAT. As the Second Circuit Court has held, an applicant's CAT claim is not "necessarily precluded because he had failed to carry his burden of proof with respect to his asylum claim. Because the CAT inquiry is independent of the asylum analysis, . . . the BIA's decision with respect to an alien's claims for asylum and withholding of removal pursuant to the INA should never, in itself, be determinative of the alien's CAT claim." Ramsameachire v. Ashcroft, 357 F.3d 169, 184-85 (2d Cir. 2004); see Kamalthas v. INS, 251 F.3d 1279,

persecuted); Prasad v. INS, 47 F.3d 336, 339-40 (9th Cir. 1995) (concluding that a single incident of being "hit and kicked while . . . briefly detained in a police station" did not constitute persecution).

As for the loss of Zheng's job, we have held that imposition of a "severe economic disadvantage," including loss of one's job, may be persecution. See Li, 400 F.3d at 167. We noted in Li, however, that such an economic disadvantage must be "deliberately imposed as a form of punishment," and, in finding that Li had suffered such persecution, we placed great reliance on the fact that he had been fined the equivalent of 20 months' salary, was fired from his government job, and was "effectively blacklisted from any government employment [such] that it would be impossible for him to find another job." Id. at 167-69. There is no evidence that Zheng was subjected to similar treatment.

1283 (9th Cir. 2001) ("[C]laims for relief under the Convention [Against Torture] are analytically separate from claims for asylum under INA § 208 and for withholding of removal under INA § 241(b)(3). . . . [A] claim under the Convention is not merely a subset of claims for either asylum or withholding of removal."). Indeed, "an alien's CAT claim may be established using different evidence and theories than the alien's INA claims, [and] [t]he CAT claim therefore must always be considered independently of the resolution of the alien's claims under the INA." Ramsameachire, 357 F.3d at 185.

Nonetheless, we conclude that the IJ's error is harmless in this case. Zheng has not proffered any evidence establishing a likelihood that he will suffer torture if returned to China. He has therefore failed to satisfy his burden of proof under the CAT.

*   *   *   *   *

For the foregoing reasons, the petition for review is denied.