**Lilit SAYADYAN, Petitioner,**

v.

**Alberto R. GONZALES, Attorney General, Respondent.**

No. 03–74760.
Agency No. A79–519–734.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 7, 2006.

Decided June 29, 2006.

James L. Rosenberg, Esq., Law Offices of James L. Rosenberg, Los Angeles, CA, for Petitioner.

CAC–District Counsel, Esq., Office of the District Counsel Department of Homeland Security, Los Angeles, CA, Ronald E. LeFevre, Chief Counsel, Office of the District Counsel Department of Homeland Security, San Francisco, CA, OIL, Robbin K. Blaya, Esq., U.S. Department of Justice Civil Div./Office of Immigration Lit., Washington, DC, Sharon D. Stokes, Esq., Atlanta, GA, for Respondent.

Before BRIGHT,\* PREGERSON, and MCKEOWN, Circuit Judges.

## MEMORANDUM \*\*

Lilit Sayadyan, a native and citizen of Armenia, entered this country on a visitor's visa and filed an application for asylum. An immigration judge denied her application, concluding she did not demonstrate that she suffered past persecution or has a well-founded fear of future persecution on account of a protected ground. The Board of Immigration Appeals affirmed without opinion, so we review the immigration judge's decision as the final agency decision. *See Chete Juarez v. Ashcroft,* 376 F.3d 944, 947 (9th Cir.2004).

We deny the petition for review. This case turns on the standard of review. "To reverse the [agency,] we must find that the evidence presented by [Sayadyan] was such that a reasonable fact-finder would be compelled to conclude that [she was] persecuted or had a well-founded fear of persecution" on account of a protected ground. *Li v. Ashcroft,* 356 F.3d 1153, 1157 (9th Cir.2004) (en banc) (citation omitted). "Phrased differently, [Sayadyan] must demonstrate that any reasonable factfinder would have to conclude that [she suffered past persecution or] has a well-founded fear of persecution." *Fisher v. INS,* 79 F.3d 955, 961 (9th Cir.1996) (en banc) (citation omitted). As explained below, an immigration judge could have found past persecution on this record, but the record does not compel that conclusion.

Because we conclude that Sayadyan has not shown instances of mistreatment that rise to the level of persecution, we do not reach whether the record requires a conclusion that the harassment Saya-

---

\* The Honorable Myron H. Bright, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

---

\*\* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

dyan experienced resulted from an imputed opposition to the Armenian government. Further, we do not address whether the record compels finding a well-founded fear of future persecution independent of whether Sayadyan suffered past persecution because she did not raise this question on appeal. *See Martinez–Serrano v. INS,* 94 F.3d 1256, 1259–60 (9th Cir.1996) (holding issues which are not specifically raised and argued in a party's opening brief are waived).

The facts are known to the parties and are briefly reviewed in light of established case law.

"Persecution is the infliction of suffering o[r] harm ... in a way regarded as offensive." *Nagoulko v. INS,* 333 F.3d 1012, 1016 (9th Cir.2003) (internal quotations and citations omitted). "Persecution, however, is an extreme concept that does not include every sort of treatment our society regards as offensive." *Id.* (internal quotations and citation omitted) (concluding record did not compel finding past persecution where applicant, as a result of her religious beliefs, suffered repeated teasing, harassment, pushing, and discrimination; restrictions on and interruptions of religious activities and ceremonies; the loss of a job; threats to be "finished," shot, and killed; and being pushed to the ground and having her handbag stolen while witnessing fellow worshippers being beaten); *see Prasad v. INS,* 47 F.3d 336, 339–40 (9th Cir.1995) (concluding record did not compel finding past persecution where ethnic Fijians stopped ethnic Indian petitioner at a roadblock, took him to a police station, placed him in a jail cell, questioned him about his support for the ethnic Indian-led Labour Party, hit him on his stomach, kicked him from behind, and released him after four to six hours); *Avetova–Elisseva v. INS,* 213 F.3d 1192, 1197 (9th Cir.2000) (concluding record did not rise to the level of past persecution where, as a result of Armenian ethnicity, applicant could not get a job, Russian officers harassed and pushed applicant, and police raped and beat her Armenian friend).

Sayadyan worked for an organization that brought foreign students to work in Armenia. During a radio interview, she made a comment to the effect that the Armenian government would embezzle donations unless made directly to her organization. Later, the Ministry of National Security questioned her about the radio interview. The following day she lost her job on "orders from above."

Shortly thereafter Sayadyan received instructions to report to Unit 6 of the Ministry of Internal Affairs, which deals with criminal matters. There, agents again asked her about the statement she made on the radio. Agents presented her with papers to sign. She did not get an opportunity to read the papers completely but, from what she did see and learn of them, those papers falsely implicated petitioner as having misappropriated three hundred dollars from the international student camp that had fired her. The agents also asked her to implicate her supervisor for misappropriating a large sum of money from the organization, although she lacked any such knowledge. She did not sign any agreements and left on a promise to return in a few days to sign the documents. This process repeated six or seven times over three to four weeks, although she did not observe documents that would incriminate her at the later appointments. During interviews, agents spoke to her in a rude manner, pushed her, and on the last date pulled her hair in a way that brought her to tears. The agents also threatened that her career and safe existence in Armenia had ended and her punishment would come.

While a reasonable fact-finder might conclude Sayadyan had suffered past persecution, the record does not compel such a conclusion. Assuming we accept Sayadyan lost her job as a result of government retaliation, no evidence exists that the government prevented her from obtaining other employment within Armenia. *See Nagoulko,* 333 F.3d at 1016 ("That Nagoulko was fired from her job as a kindergarten teacher because of her religious beliefs, while discriminatory, is not the type of economic deprivation that rises to the level of persecution."). The record shows nothing particularly harmful about the threats made against her. This court has said, "Threats themselves are sometimes hollow and, while uniformly unpleasant, often do not effect significant actual suffering or harm." *Lim v. INS,* 224 F.3d 929, 936 (9th Cir.2000). Sayadyan claimed interrogators pulled her hair, but the physical violence lasted only a brief moment and did her no real harm. *See Prasad,* 47 F.3d at 339 ("While we certainly condemn the attack on Prasad, it is not, in our judgment, so overwhelming so as to necessarily constitute persecution by the Fijian Government on account of political opinion or race."). The agents never arrested her or kept her overnight. *See Al–Saher v. INS,* 268 F.3d 1143, 1146 (9th Cir.2001) (concluding five- to six-day detention of Iraqi did not amount to persecution), *amended by* 355 F.3d 1140 (9th Cir.2004); *Khourassany v. INS,* 208 F.3d 1096, 1100 (9th Cir.2000) (concluding no persecution where petitioner "was detained and questioned by the Israeli police for only short periods of time, was never jailed or charged with any crime, and was never handcuffed, beaten or threatened injury by the Shabak.").

We are not permitted to substitute our view of the case for that of the agency. *See Prasad,* 47 F.3d at 340. Under the record in this case, we will not disturb the agency's determination that Sayadyan failed to demonstrate past persecution.

This case is unlike the cases relied upon by Sayadyan where any reasonable fact-finder must find past persecution. *See Chand v. INS,* 222 F.3d 1066, 1073–74 (9th Cir.2000) (concluding record compelled finding past persecution where Fijian soldiers on three occasions attacked and beat applicant, beat applicant's father to death, and robbed and forced applicant to vacate his home); *Gonzalez v. INS,* 82 F.3d 903, 910 (9th Cir.1996) ("The evidence of past persecution presented by Mrs. Gallegos, including the multiple and continuing death threats, marking her house, taking away of her ration card and means to buy inventory, and harassing and taking away the property of her family, all on account of political opinion, compel a finding of past persecution.").

PETITION FOR REVIEW DENIED.