**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JUL 15 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| VAHAGN HOVHANNISYAN, | No. 19-71459 |
| Petitioner, | Agency No. A209-941-836 |
| v. | |
| WILLIAM P. BARR, Attorney General, | MEMORANDUM* |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted June 2, 2020**
Pasadena, California

Before: CALLAHAN and NGUYEN, Circuit Judges, and R. COLLINS,*** District Judge.

Dissent by Judge NGUYEN

Vahagn Hovhannisyan, a citizen of Armenia, petitions for review of the

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

\*\*\* The Honorable Raner C. Collins, United States District Judge for the District of Arizona, sitting by designation.

decision of the Board of Immigration Appeals (BIA) affirming an immigration judge's (IJ) denial of his application for asylum under 8 U.S.C. § 1158(b)(1)(A). The BIA agreed with the IJ that Hovhannisyan (1) did not show that the harm he suffered in Armenia in connection with his participation in political demonstrations rises to the level of past persecution, and (2) did not meet his burden to establish a well-founded fear of future persecution. We have jurisdiction under 8 U.S.C. § 1252. Reviewing the BIA's legal determinations de novo and its factual findings for substantial evidence, *Wakkary v. Holder*, 558 F.3d 1049, 1056 (9th Cir. 2009), we deny the petition for review.[1]

1.      Hovhannisyan testified that, following his attendance at an anti-establishment political rally in Armenia in April 2017, he was beaten by police and then detained for two days and warned to stop attending the rallies, and that after his attendance at another political rally two weeks later he was briefly detained and beaten by the President's nephew and other individuals.[2] He contends that these two incidents "collectively" rise to the level of past persecution and that the BIA's contrary determination was erroneous. In order for us to reverse the BIA's determination, however, Hovhannisyan must show "that the evidence he presented

---

[1] Because the parties are familiar with the facts of this case, we do not discuss them in detail here.

[2] Hovhannisyan conceded below that the President's nephew was a "private actor," not a government official.

was so compelling that no reasonable factfinder could fail to find" persecution. *Prasad v. INS*, 47 F.3d 336, 338 (9th Cir. 1995) (quoting *INS v. Elais-Zacarias*, 502 U.S. 478, 483–84 (1992)). Here, as in *Prasad*, "[a]lthough a reasonable factfinder could have found [these incidents] sufficient to establish past persecution, we do not believe that a factfinder would be compelled to do so." *Id.* at 340. In particular, we note that neither incident resulted in serious injuries requiring medical treatment, there is no indication that Hovhannisyan was repeatedly targeted or that the events were related, there is no evidence that the government has a continued interest in Hovhannisyan, and he was neither asked nor forced to renounce his political beliefs. *See Gu v. Gonzales*, 454 F.3d 1014, 1020–21 (9th Cir. 2006).

2.      Having failed to establish past persecution, Hovhannisyan is not entitled to "a rebuttable presumption of a well-founded fear of future persecution." *Id.* at 1019 (citing 8 C.F.R. § 208.13(b)(1)). We conclude that substantial evidence supports the BIA's conclusion that Hovhannisyan has not met his burden to establish a well-founded fear of persecution. Similar to *Wakkary*, Hovhannisyan has not demonstrated "a 'reasonable possibility' that he will be 'singled out individually for persecution' if removed" or that "there is a systematic 'pattern or practice' of persecution against the group [the Yelk Party/Alliance] to which he belongs in his home country, such that, even without any evidence of individual

3

targeting, his fear of persecution is deemed reasonable." 558 F.3d at 1060 (quoting 8 C.F.R. § 1208.13(b)(2)(iii)). Hovhannisyan has presented no evidence that the Armenian government (1) has a continued interest in harming him individually, or (2) has targeted or intends to target individuals for persecution based on their support for the Yelk Party/Alliance. Furthermore, although Hovhannisyan contends that "if he were return to Armenia, his persecution will continue and will possibly end in his death," he provides no evidence to support this claim. In sum, the evidence Hovhannisyan has presented is not "so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." *Elais-Zacarias*, 502 U.S. at 484.

**PETITION DENIED.**[3]

---

[3] The petitioner's motion for stay of removal is denied as moot.

*Hovhannisyan v. Barr*, 19-71459

NGUYEN, Circuit Judge, dissenting:

The IJ found that the second beating—in which the Armenian president's nephew detained and beat Hovhannisyan for participating in a political rally—did "not rise to the level of past persecution." According to the IJ, the president's nephew was a private actor and, "other than [Hovhannisyan]'s testimony, there [was] no evidence in the record to show that the president's nephew [was] someone the Armenian government [was] unable to control." The "testimony" that the IJ referred to was Hovhannisyan's testimony that the president's nephew had become a "star" in Armenia because of his misconduct. That testimony, the IJ reasoned, was undermined by the 2016 Armenian Human Rights Report's failure to mention the president's nephew.

But Hovhannisyan offered additional evidence that the government was unable or unwilling to control the president's nephew. *See Baballah v. Ashcroft*, 367 F.3d 1067, 1078 (9th Cir. 2004) ("[W]here non-governmental actors are responsible for persecution . . . we consider whether an applicant reported the incidents to police, because in such cases a report of this nature may show governmental inability to control the actors."). Hovhannisyan credibly testified that he'd tried to report the second beating to the police, who were at first sympathetic but then refused to help once he mentioned the president's

nephew. The police refused to take his complaint and threatened to "put [him] in jail . . . for false accusations." The IJ didn't discuss any of this. And because the IJ erroneously discounted the second beating, neither it nor the BIA meaningfully considered the cumulative effect of the two beatings.

The majority concludes that a factfinder would not be compelled to find the two beatings "collectively" rose to the level of past persecution. That may be true, but in so doing it applies our deferential standard to a factual finding that flowed from the IJ's flawed discounting of the second beating. Had the IJ meaningfully considered the issue, the IJ might have concluded that the two beatings cumulatively justified a presumption of past persecution. And as the majority acknowledges, a reasonable factfinder could have found the incidents sufficient to establish past persecution. For these reasons, I would grant the petition and remand to the agency to develop more fully the issue of whether the cumulative effect of the two beatings rose to the level of past persecution.