

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-25-2006

# Korovoti v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2834

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Korovoti v. Atty Gen USA" (2006). *2006 Decisions.* Paper 1228.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1228

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 04-2834

———————

DEVIS KOROVOTI,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES;
SECRETARY OF DEPARTMENT OF HOMELAND SECURITY,

Respondents

———————

On Petition for Review of an Order of
The Board of Immigration Appeals
Immigration Judge: Honorable Daniel A. Meisner
(No. A78-573-611)

———————

Submitted Under Third Circuit LAR 34.1(a)
April 20, 2006

Before: SLOVITER and AMBRO, Circuit Judges,
and DuBOIS,* District Judge

(Opinion filed April 25, 2006)

———————

*Honorable Jan E. DuBois, Senior District Judge for the Eastern District of
Pennsylvania, sitting by designation.

OPINION

AMBRO, <u>Circuit Judge</u>

Devis Korovoti petitions for review of an order of the Board of Immigration Appeals ("BIA") that summarily affirmed the decision of an Immigration Judge ("IJ") denying his application for asylum and withholding of removal and his request for relief under the Convention Against Torture ("CAT"). The IJ concluded that Korovoti's asylum application was untimely, and that he failed to offer credible evidence of past persecution, a well-founded fear of future persecution, or a likelihood of future torture. We conclude that the IJ's decision is essentially correct, and thus deny the petition for review.

**I.**

Because we write for the parties, we only briefly recount the relevant facts. Korovoti is a 32-year-old male from Albania. Although there is some confusion as to when he entered the United States (a fact that shall be discussed in greater detail below), it is undisputed that he entered this country unlawfully. He was placed in removal proceedings by a Notice to Appear in July 2002 and conceded removability at a hearing before the IJ in August 2002. He filed an application for asylum and withholding of removal in September 2002, in which he stated that he was a member of the Democratic Party of Albania ("DP"). He alleged he was beaten and arrested at a DP demonstration in

2

1992, and thereafter left Albania and went to Greece, but returned to Albania in 1994. Korovoti claimed that his father's office was destroyed by fire in 1996, and in 1997 the same fate befell a factory his family owned. He alleged that both fires were started by "communist supporters." He again went to Greece but returned to Albania in July 2001. Upon his return, he received threats from "anti-democratic individuals in my town," and decided to go back to Greece. He then came to the United States, where his parents and sister were lawful permanent residents.

At a hearing before the IJ in January 2003, Korovoti's counsel withdrew his request for asylum on the ground that Korovoti filed his application more than one year after he entered the United States, and was therefore statutorily ineligible for asylum. See 8 U.S.C. § 1158(a)(2)(B). In an oral decision dated January 28, 2003, the IJ denied Korovoti withholding of removal and relief under the CAT. Korovoti appealed to the BIA, which summarily affirmed the IJ. He then filed this petition for review.

## II.

We have jurisdiction over Korovoti's petition under 8 U.S.C. § 1252(b)(2) and (d). Where, as here, the BIA summarily affirms the IJ's oral decision and adopts that decision as the final agency action, we review the IJ's decision directly. See Dia v. Ashcroft, 353 F.3d 228, 240 (3d Cir. 2003) (en banc). The IJ's factual findings, including his determination of whether an alien was subject to past persecution or has a well-founded fear of future persecution, are reviewed under a substantial evidence standard. Shardar v.

3

Ashcroft, 382 F.3d 318, 323 (3d Cir. 2004). The IJ's credibility determinations are also reviewed under this standard. Cao v. Att'y Gen., 407 F.3d 146, 152 (3d Cir. 2005). In conducting this analysis we consider the record as a whole and shall reverse only if "'[a] reasonable adjudicator would be compelled to conclude to the contrary.'" Shardar, 382 F.3d at 323 (quoting 8 U.S.C. § 1252(b)(4)(B)).

## III.

At the outset, we note that Korovoti stated in his asylum application that he entered the United States in June 2002, a date corroborated by the Notice to Appear. Thus, his September 2002 asylum application was timely. Although Korovoti marked "Yes" on his asylum application next to the question "Are you filing th[is] application more than one year after your last arrival in the United States?", we believe this was merely a typographical error, since it is clear from the Notice to Appear, and the timing of his initial appearance before the IJ, that he arrived in the summer of 2002.[1] Nonetheless, for some inexplicable reason, Korovoti's counsel withdrew his asylum claim on the ground that Korovoti filed his application more than one year after he entered the United States. Korovoti never attempted to reinstate his asylum application before the IJ, nor did he raise this issue in his appeal to the BIA. We therefore lack jurisdiction to consider the issue.[2]

---

[1] Korovoti also testified before the IJ that he arrived in the United States in June 2001 but quickly corrected himself, stating that he meant to say June 2002.

[2] As explained below, the IJ's decision that Korovoti could not establish past persecution or a well-founded fear of future persecution is supported by substantial evidence, and thus the erroneous withdrawal of his asylum claim is harmless.

4

See 8 U.S.C. § 1252(d); Bonhometre v. Gonzales, 414 F.3d 442, 447 (3d Cir. 2005) ("[A]n alien must exhaust all administrative remedies available to him as of right before the BIA as a prerequisite to raising a claim before us." (emphasis omitted)).

We are left, then, to consider his claims for withholding of removal and relief under the CAT. We begin with the latter. Korovoti has provided no evidence that he will "'more likely than not'" be subjected to torture in Albania. See Auguste v. Ridge, 395 F.3d 123, 133-34 (3d Cir. 2005) (quoting 8 C.F.R. § 208.16(c)(2)). Torture is "'an extreme form of cruel and inhuman treatment'" that is "'specifically intended to inflict severe physical or mental pain or suffering.'" Id. at 133 (quoting 8 C.F.R. § 208.18(a)). We agree with the IJ that Korovoti has not provided any evidence tending to show a future likelihood that he will suffer such treatment.

Turning to the withholding of removal claim, the IJ concluded, inter alia, that: (1) Korovoti's statements about when he came to the United States were inconsistent; (2) his statements about the length of time he spent in Greece were inconsistent and at odds with his alleged activities in Albania; (3) he never sought asylum in Greece despite having lived there for four years; and (4) even if Korovoti's testimony was entirely consistent and credible, the adverse treatment he allegedly suffered in Albania did not rise to the level of persecution.

For the most part, we agree with the IJ. Although substantial evidence does not support the IJ's adverse credibility determination regarding the supposed confusion over

5

when Korovoti arrived in the United States (since, as explained above, it is obvious he arrived in June 2002), we believe the IJ was well within his discretion in finding Korovoti's credibility to be suspect in light of the significant discrepancies regarding his time in Greece and his activities in Albania. For example, Korovoti stated in his asylum application that he was in Greece from January 1997 to July 2001, and that he lived in Albania from July 2001 to June 2002. He also stated, however, that he was employed in Greece until September 2001, and thus worked in Greece for about two months in the summer of 2001 when he was supposedly living in Albania. Korovoti further stated in his application that his family's factory was burned in March 1997, and that, because he was "afraid and upset about this serious attack against [his] property," he returned to Greece. As noted, however, his application also states that he went to Greece in January 1997, two months before the factory was allegedly burned.[3]

Moreover, Korovoti testified that he joined the DP in March 2003, but submitted a certificate from the DP chairman in his home town that states he joined the party in May 1995. The certificate also states that Korovoti was a DP election observer in Albania in 1997, 2000, and 2001, even though he claimed to be living and working in Greece at the time. Although he contends in his brief that he traveled back to Albania to take part in

_____

[3] Korovoti argues in his brief that these inconsistencies are minor and unrelated to his asylum claims. We disagree. Insofar as Korovoti escaped to Greece to avoid persecution in Albania, the times he was there and the times he returned to Albania and allegedly suffered persecution are of central importance to his claim.

those activities, he did not offer this explanation during his testimony before the IJ.

We also note that the IJ did not err in holding that, even taking all of Korovoti's allegations as true, he did not establish past persecution or a well-founded fear of future persecution. Korovoti alleged one incident of violence — his beating and arrest at the 1992 DP demonstration — that did not result in any injury. Although acts of violence committed by government officials are always troubling, courts are generally reluctant to find that a single incident of violence that did not cause injury to the victim constitutes persecution. See Voci v. Gonzales, 409 F.3d 607, 615 (3d Cir. 2005) ("While this Court has not yet drawn a precise line concerning where a simple beating ends and persecution begins, our cases suggest that isolated incidents that do not result in serious injury do not rise to the level of persecution."); see also Quevedo v. Ashcroft, 336 F.3d 39, 45 (1st Cir. 2003) (holding that a single beating at the hands of soldiers, "while undoubtedly terrifying, does not rise to the level of severity necessary for a court of appeals to set aside the [IJ's] conclusion" that the petitioner was not persecuted); Prasad v. INS, 47 F.3d 336, 339-40 (9th Cir. 1995) (concluding that a single incident of being "hit and kicked while . . . briefly detained in a police station" did not constitute persecution).

Furthermore, although the alleged burning of the factory owned by Korovoti's family might rise to the level of persecution, he has not provided any evidence that the factory was targeted because of his association with the DP; indeed, the IJ noted that the factory was attacked in the course of riots and general chaos sparked by Albania's severe

7

economic crisis.[4] Based on these facts, and the IJ's conclusion that documents corroborating Korovoti's story were available but not presented (which we accept pursuant to 8 U.S.C. § 1252(b)(4)), we conclude that Korovoti failed to sustain his burden of proving that he was persecuted or has a well-founded fear of future persecution. He thus cannot demonstrate entitlement to withholding of removal.

*   *   *   *   *

We therefore conclude that the IJ's decision is supported by substantial evidence. Hence, we deny the petition for review.

---

[4] Although it is unclear from the IJ's decision the extent to which he relied on the State Department's Profile of Asylum Claims for Albania (submitted by the Government as evidence of the general political climate in the country), we note that we have expressed disapproval of this particular document before, and it should not be viewed as a substitute for the State Department Country Report. See Caushi v. Att'y Gen., 436 F.3d 220, 230 n.6 (3d Cir. 2006) (noting that the Profile "makes several broad statements, including that '[t]here is virtually no evidence that individuals are targeted for mistreatment on political grounds,' '[t]here is no post-Communist tradition of retribution against political leaders and few instances thereof,' and '[t]he Government has neither the means nor the will to carry out systematic persecution,'" that are "at odds with the State Department's 2000 and 2001 Country Reports for Albania (which we have described as 'the most appropriate and perhaps best resource on country conditions')" (quoting Ambartsoumian v. Ashcroft, 388 F.3d 85, 89 (3d Cir.2004)) (internal quotation marks omitted)).